### The Kansas City, Fort Scott & Gulf Railroad Company v. O. F. Hines.

EVIDENCE, *Tending to Prove Negligence of Company.* In an action by the owner of a cow for injuries to her by a railroad company, the evidence tended to prove that the cow was standing upon the railroad track, in plain view of an approaching train; that she could have been seen by those in charge of the train 800 feet before the engine reached the place where she stood; that the train was moving at the rate of about ten miles per hour; that it could have been stopped within 600 feet; but that it was not stopped nor even slacked in its motion, and the whistle was not sounded; but the train moved on, and when the engine approached within about fifteen feet of the cow, she attempted to escape and ran along the track about thirty feet, when the engine overtook her and struck her on the left hip, throwing her from the track and causing the injuries for which the plaintiff sued. *Held,* That such evidence tended to prove negligence on the part of the railroad company.

#### *Error from Bourbon District Court.*

ACTION by *Hines* against *The Railroad Company,* to recover the value of his cow, alleged to have been killed by the defendant company. Trial at the September term, 1883, before E. F. W., judge *pro tem.,* and a jury. The plaintiff

offered in evidence the deposition of G. H. Corbett, but the defendant objected to such evidence and all evidence on behalf of the plaintiff, because the facts have been heretofore agreed upon by the parties, as is shown by the agreed statement of facts on file.    Defendant also objected to the issues being submitted to a jury, for the reason that, as the facts had been agreed on, the jury had no duty to perform in the case, and it only remains for the court to pronounce judgment on the facts as agreed to.    Both objections were overruled by the court, and the defendant excepted.    Corbett, in his deposition, testified as follows:

"My name is G. H. Corbett.    I reside in Fulton, Bourbon county, Kansas.    I was living there last November.    I was in the employ of Taylor & Delano, working in their mill.    I know O. F. Hines, the plaintiff.    I knew a cow that he owned along in the month of November.    This cow was injured by the locomotive of the Kansas City, Fort Scott & Gulf railroad company.    I saw the locomotive strike the cow.    I was standing in the engine room of the mill, in the door, when I saw the cow struck.    The locomotive was hauling a freight train coming north.    The cow was standing between a car where they had been loading corn on the side track and the main track."

To the foregoing evidence the defendant interposed a special objection, because the agreed statement of facts stipulates that the cow was killed by the defendant in the usual and ordinary operation of its road.    The defendant also objected to all evidence proving, tending to prove, or by which it is intended to prove, negligence in the operation of the defendant's railroad, because of said clause in the agreed statement of facts. (Objections overruled, and excepted to.)

(*Deposition continued:*) "The cow was in plain view from the track, and could have been seen 800 feet from the locomotive as it came north.    The locomotive with the train was coming fast, at about the rate of ten miles an hour, when it struck the cow.    It is a little up grade.    There is a railroad crossing about seventy feet south of where the cow was, and the depot of the railroad company was about 200 feet north of where the cow was.    Engineers ring their engine bells at crossings, ordinarily.    On the day the cow was struck, the engine bell

was rung before they reached this crossing, and continued to ring until the cow was struck. No whistle was blown and no steam was let out for the purpose of frightening the cow. The engine was about fifteen feet from the cow, when she started to run. She ran about thirty feet north on the track before the engine struck her. It struck her on the left hip, and knocked her off the track on the west side. The train did not slacken speed from the time I first saw it, but went on past the depot, going north. This was sometime in the latter part of November, 1880."

(*Cross-examination:*) "The cow was killed at a place where people who did business with the railroad company load cars. The cow was struck in the town of Fulton, about fifteen or twenty feet from Taylor & Delano's mill. At the time there were cars standing on the side track. I saw the locomotive about fifteen feet before it struck the cow. There is about three feet of grade-fill at the place where the cow was struck. There is a gradual curve to the right, looking south from the point where the cow was struck. I judge the train was running about ten miles an hour from the way it went past me. I have no other means of knowledge. I mean by letting off steam, that the cylinder-cocks are opened. I know something about locomotives, as I have worked on them. Mr. Hines, the plaintiff, at the time the cow was struck had no one looking after or attending to her. The cow was not killed — Mr. Hines killed her to put her out of her misery. There was other stock out there, but they ran out on the east side. They were all standing on the south side of the car, and there was nothing to prevent them getting out of the way."

John Lucas was then sworn as a witness on behalf of the plaintiff. To the question, "Where do you live, Mr. Lucas?" the defendant objected, and to any further evidence on the part of the plaintiff, because the bill of particulars does not state a cause of action for the reason that several causes of action are improperly joined; the bill declaring under the stock law of 1874, and for negligence. (Objection overruled, and excepted to.)

To the question, "What are the duties of an engineer, in regard to road-crossings?" the defendant objected as incompetent, which objection was overruled, and the ruling excepted to. The witness answered, "To sound the whistle three times."

To the question, "What is his duty regarding stock on the track?"—objection, ruling and exception as above—the witness answered:

"His duty is, when he first sees the stock, to sound the whistle for brakes, and then whistle right along. It is also the custom sometimes to open the cylinder cocks of the engine."

William Hulbert was then sworn as a witness for the plaintiff, and testified as follows:

"I have been a locomotive engineer for twenty years on freight trains. Q. Do you know what are the rules, customs and duties of an engineer of a freight train on the defendant's road?"

(Objected to by the defendant as incompetent; objection overruled, and excepted to.) A. "I do." Q. "What are these rules?" (Objection, ruling and exception, as above.)

"A. In the first place, to avoid killing stock if possible, and to use all available means to do so. These are our instructions. Our duty is to slow up if we can; but if we can't, to hit the stock as hard as we can. If we are working steam we open the cylinder cocks to help frighten off stock. It is usual also to sound the whistle and ring the bell. The letting off steam at the cylinder cock is entirely discretionary with the engineer, and depends on circumstances. It is down grade at the place where this cow was killed, and the engine would not be working steam so that he could not have opened his cylinder cocks."

(*Cross-examination:*) "Twelve miles an hour is as fast as freight trains are permitted to run. Ten miles an hour is the ordinary speed of such trains."

(*Re-examination in chief:*) "I wouldn't like to go north through Fulton over twelve miles an hour. A train running at the rate of ten miles an hour at the place where this cow was killed ought to be stopped in the length of the train. A train is twenty cars, and a car is thirty feet long."

To further maintain the issues on his part, the plaintiff offered the following agreed statement of facts, on file in the action:

"1. The defendant is a railroad corporation owning and operating a railroad in Bourbon county, Kansas, and was such on or about November 29, 1880.

"2. Such railroad is not fenced in Bourbon county, Kansas, and was not at said date, to wit: November 29, 1880.

"3. At said time the plaintiff owned a certain cow of the value of $35, which cow was killed on said railroad at the place hereinafter described, in the usual and ordinary operation by defendant of its railroad.

"4. More than thirty days prior to the commencement of this action the plaintiff made legal demand on defendant for the value of said cow.

"5. If plaintiff is entitled to recover an attorney's fee in this action, then thirty-five dollars is a reasonable compensation for the services of his attorneys, being ten dollars for the trial before the justice and twenty-five dollars for the trial before the district court.

"6. The place where the said cow entered upon the track of defendant and was killed, was in the incorporated town of Fulton, said town being in Bourbon county, and laid off into blocks and lots. The identical point where the cow was killed was about fifty yards south of the passenger depot of defendant, and about opposite an elevator standing by the side of the railroad. The side track of defendant runs past and covers the place where the cow was killed, and said side track at that point is used by the defendant and the public in the transaction of business, and in loading and unloading freight of various kinds. It would be impracticable to fence such part of defendant's railroad, as Fulton is a town of 300 or 400 inhabitants, in which are situated six or eight stores, two or three agricultural implement houses, a large lumber yard, two elevators, post office, etc. It is the point where the inhabitants and those of the surrounding country transact their business with the defendant."

The defendant demurred to plaintiff's evidence for the reason that such evidence does not prove a cause of action against the defendant and in favor of the plaintiff, which demurrer the court overruled, and the defendant excepted. The defendant offered no evidence. The court instructed the jury as follows:

"1. This is an action brought by the plaintiff against the railroad company for the value of a cow alleged to have been killed by the defendant in the operation of its railroad. By the agreed statement of facts it is shown that said cow was killed in the village of Fulton, in Bourbon county, Kansas, and that the road was not fenced within the limits of said village, and that the killing took place at the railroad station in said village, within 200 feet of the passenger depot in said village.

The court instructs you that under the circumstances shown in the said agreed statement of facts the defendant was not bound to fence the line of its road in said village at the place where the killing is admitted to have taken place. Hence there *is* no liability under chapter 94, Laws 1874.

"2. The ground upon which the plaintiff must recover, if at all, in this case is, the negligence of the defendant. . Upon this question the preponderance of the testimony must be with the plaintiff, the *burden of proof* being with him.

"3. The court further instructs you that plaintiff is not entitled to the recovery of any attorney-fees in this action.

"4. If you believe that the animal was killed by the negligence of the defendant, and if you believe that had the defendant used usual or ordinary and reasonable diligence the killing would not have taken place, then you will find for the plaintiff; otherwise, for the defendant.

"5. You are the exclusive judges of the evidence. If you find for the plaintiff, then the amount of your verdict will be for the value of the cow as agreed upon, and 7 per cent. interest thereon from November 29, 1880. If you find for the plaintiff, the form of your verdict will be ——; if you find for the defendant, the form of your verdict will be ——."

The jury found a verdict for the plaintiff, and assessed his damages at $41.95. The jury also returned answers in writing to certain questions submitted to them, at the request of the defendant, which questions, with the answers thereto, are as follows:

"Q. 1. Was the defendant guilty of negligence?

"A. Yes.

"Q. 2. If the above question be answered in the affirmative, what was or were the negligent act or acts?

"A. That he did not give the customary signals or slow up his train."

Defendant's motions for a judgment, *non obstante veredicto*, and for a new trial, were overruled. Judgment upon the verdict for plaintiff. The defendant brings the case here.

*Wallace Pratt*, and *Blair & Perry*, for plaintiff in error:

The third clause of the agreed statement is so plain, the language is so direct, that we cannot conceive how a majority of the court could say it is of "doubtful interpretation." (29

Kas. 696.) The writer of the agreed statement of facts is at a loss to know how the idea that the cow was killed by the defendant in the usual and ordinary operation of its railroad, and without negligence, can be expressed with more clearness and perspicacity than by the words that are said to be of "doubtful interpretation." The amount of money involved in this controversy should not affect the decision of the question. The principle is here. The defendant would be in the same predicament were the judgment a large one. The men who are said to have operated the train negligently cannot be found. They were permitted to go without testifying in the action, on the strength of the agreed statement of facts. The defendant cannot disprove the statements of the witnesses for the plaintiff, and it cannot do this because its counsel believe the agreed statement of facts means what it says, and that the lexicographers are right in defining the adjectives "ordinary" and "usual" to mean "established; settled; accustomed; conforming to the regular order; common; frequent; general."

The court will pardon the bluntness of the argument, which arises from an earnest belief in its logic and strength.

Aside from the foregoing, it is urged that the record contains other errors, as follows:

(*a.*) The objection that the bill of particulars does not state a cause of action, for the reason that several causes of action are improperly joined, should have been sustained. The pleading declares under the stock law of 1874, and for negligence. These are separate and distinct causes of action, and should be separately pleaded. If the plaintiff sued on the liability of the defendant at common law for negligence, the law of 1874 was not a factor in the controversy; and if he relied on the statute, then it should alone determine the action, without reference to anything else. The remedies are not concurrent.

(*b.*) The trial court erred in not charging the jury on the question of contributory negligence. The evidence clearly shows the plaintiff to have been guilty of negligence *per se.*

The witness Corbett says that "the plaintiff, at the time the cow was struck, had no one looking after or attending to

40—32 KAS.

her." The evidence also shows that the plaintiff had turned his cow out in the incorporated town of Fulton, at a point fifty ·yards south of the railroad depot, on the railroad tracks, opposite an elevator, where grain was scattered about, where the side tracks were constantly in use by the public in loading and unloading merchandise, and where it was imposslble to fence the railroad.

In *Rld. Co. v. Phillippi*, (20 Kas. 14,) the chief justice uses this language: "With full knowledge that he might, at any moment, expect the morning train going east, he got his cattle near to the railroad track, on the public highway, and then loitered along, absolutely indifferent as to results." In that case the owner of the stock had the right to occupy the highway, and the sum of his fault consisted in not watching for the train and keeping his stock off the track. Here the plaintiff deliberately turned his cow into the depot grounds of defendant, at a place where cars were constantly standing, and grain and corn lying, and where the animal would be sure to stop. Under these circumstances, the defendant would not be liable for anything less than wanton carelessness. The plaintiff was not only a trespasser, but he utterly disregarded the imperative demands of common prudence and ordinary care.

(*c.*) The evidence does not prove negligence. Without such proof the judgment cannot stand. The trial court instructed the jury correctly to that effect. The only evidence claimed by plaintiff as establishing negligence is that of the witness Corbett, who says the engineer did not sound his whistle, as required by law on approaching the road-crossing which intersects the railroad near the point where the accident occurred. There is nothing showing this to have been the cause of plaintiff's loss. Admitting that the witness told the truth, it must appear that the alleged act caused the injury. Evidence must always be addressed to the act complained of. (*Braxton v. Rld. Co.*, 77 Mo. 455.)

(*d.*) The testimony of Lucas and Hulbert is incompetent and immaterial, and the objection thereto should have been sustained. The duty of an engineer on approaching a road-

crossing is a matter of law, and had nothing to do with this case. The evidence was prejudicial, and calculated to mislead. So also was the evidence as to the custom of engineers on seeing stock on the track. The proof should have been directed to the act complained of, at the time and under the circumstances of the case. Generalities, such as the witnesses swear to, in no sense enlightened the jury or emphasized the issue between the parties.

"In an action by an administratrix to recover for causing the death of an intestate by negligence while engaged in coupling cars, evidence of the usual mode of coupling and uncoupling cars at the same place by others is inadmissible. What others did, or were in the habit of doing, does not tend to prove the issue as to due care by the deceased." (*C. R. I. & P. Rld. Co. v. Clark*, 108 Ill.; 23 Am. Law Reg. 211.)

*West & Humphrey*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This case has once before been to this court. (*K. C. Ft. S. & G. Rld. Co. v. Hines*, 29 Kas. 695.) When the case was returned to the district court it was again tried by the court and a jury, and judgment was again rendered in favor of the plaintiff, Hines, and against the defendant railroad company; and the defendant, as plaintiff in error, again complains. On the second trial of the case in the district court the same agreed statement of facts was introduced in evidence as on the first trial, and such other evidence was introduced as the plaintiff chose to introduce. The defendant did not choose to introduce any evidence, but submitted the case upon the plaintiff's evidence. The action was for alleged injuries by the defendant to the plaintiff's cow. The evidence tended to prove that the cow was standing upon the railroad track, in plain view of an approaching train; that she could have been seen by those in charge of the train 800 feet before the engine reached the place where she stood; that the train was moving at the rate of about ten miles per hour; that it could have been stopped within 600 feet; but that it was not

stopped nor even slacked in its motion, and the whistle was not sounded; but the train moved on, and when the engine approached to within about 15 feet of the cow, she attempted to escape, and ran along the track about 30 feet, when the engine overtook her and struck her on the left hip, throwing her from the track, and causing the injuries for which the plaintiff sued. The jury found a general verdict in favor of the plaintiff and against the defendant, and also found that the defendant was guilty of negligence in not giving "the customary signals" and in not "slowing up" the train.

We think the evidence tended to prove negligence, and therefore that it cannot be said that the verdict of the jury is wrong. There was no conflicting evidence. With reference to the points made by counsel for plaintiff in error, defendant below, we would say:

1. As to their point "*a*," see the case of *Stewart v. M. A. & B. Railroad Co.*, 27 Kas. 631.

2. As to their point "*b*," the trial court was not asked to charge the jury with reference to the question of contributory negligence, nor was the evidence such as to require the court to so charge.

3. As to their point "*c*," the evidence does tend to prove negligence.

4. As to their point "*d*," the testimony of Lucas and Hulbert was not in any manner erroneously prejudicial to the substantial rights of the defendant. A part of it may have been immaterial in the case, and another part may have been unnecessary, as the court might have taken judicial notice of the facts testified to without proof. We think that a court may take judicial notice that it is generally the duty of the employés of a railroad company in charge of a moving train to sound the whistle whenever stock is on the track in front of the train, and also to slacken the speed of the train, or even stop it, if necessary and practicable, to avoid coming in contact with the stock. The rest of the testimony of said witnesses was competent and proper.

The judgment of the court below will be affirmed.

All the Justices concurring.