SAMUEL BUNNELL, Respondent, *v.* RIO GRANDE WESTERN RAILWAY COMPANY, Appellant.

RAILROAD COMPANIES—STOCK ON TRACK—NEGLIGENCE—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE.

1. B turned his cattle upon the highway, unattended by any person. His dog drove them to a point between two railroads, which were about 80 yards apart, when it left them and went home, in view of B, who made no further effort to drive them across defendant's track to their pasture, where they were to go. All had crossed defendant's track but one, which remained behind the wing fence extending out from the cattle guard; and when defendant's passenger train, running at a speed of forty miles per hour, approached, the cow ran in the direction of the other cattle, onto the track, and was killed. The engineer had sounded the whistle for the crossing, and upon observing the cow moving from behind the wing fence, gave a succession of short blasts, but was too close to stop the train, and made no effort to stop. The place of the accident was a mile or more from any town. *Held,* that the engineer was not guilty of negligence, and that the railroad company was not liable.

2. A railroad company is not required to run its train at a low rate of speed through a sparsely-settled country, or to check the same at ordinary highway crossings, outside of cities and villages, unless the condition of its road requires it.

3. When cattle are in a highway near a railroad track, and appear quiet, an engineer is not bound to presume that they will suddenly run upon the track, but he must observe the track ahead of the train as constantly as his other duties will permit, and use every precaution to avoid injury to stock which is consistent with the safety of the passengers and train.

4. Those operating a train must exercise ordinary care, skill, and vigilance; and, in operating a passenger train, their first

duty is to the passengers, and they will be held to a high degree of care. When collision with stock cannot be avoided, the speed of the train may be increased, if by so doing there is less danger of derailing the train and injuring the passengers.

5. In a case like this, the essential inquiry is not whether all possible appliances were employed and efforts made to stop the train, or check the speed, to avoid the accident, but whether the acts and conduct of the engineer, and those in charge of the train were such as ordinary care, skill, and vigilance demanded; in view of the safety of the passengers, the speed of the train, and the position of the stock.

6. The proximate cause of the injury was the turning of the cattle, unattended, upon the highway, between two railroad tracks upon which trains frequently passed.

7. The fact that contributory negligence was not affirmatively pleaded in the answer is immaterial, in view of the fact that plaintiff's own evidence showed that he was guilty of negligence which was the proximate cause of the injury.

8. The court instructed the jury as follows: "The plaintiff also had the right to that highway, as well as the rest of the public, for their cattle, or for their individual crossing." *Held,* erroneous and misleading, under the circumstances of the case.

(No. 666.   Decided April 9, 1896.   44 P. R. 927.)

Appeal from the district court of the First judicial district, Territory of Utah.   Hon. W. H. King, *Judge.*

Action by Samuel E. Bunnell against the Rio Grande Western Railway Company for damages sustained through the killing of a cow by defendant's train.   The facts are set forth in the opinion.   From a judgment in favor of plaintiff, defendant appeals.   *Reversed.*

*Bennett & Bradley,* for appellant.

An engineer is not called upon to stop because cattle are near the track or a bridge and may step onto it, or if

stopping is more dangerous than proceeding, he may even increase his speed. 13 Eng. and Am. Ry. Cases, 519; 19 Eng. and Am. Ry. Cases, 512; 45 Eng. and Am. Ry. Cases, 496.

Turning cattle into the highway, unattended, in the vicinity of a railroad is negligence, and he could not demand that the defendant should herd his cattle and take care of them. *Flint* v. *Pere & M. Ry. Co.*, 79 Mich. 323; 45 Eng. and Am. Ry Cases, 496.

There is some conflict of authority as to whether contributory negligence must be alleged. In this case the plaintiff alleged that his cow was lawfully on the highway and the defendant denied it. Where the plaintiff's proof shows his negligence, all the cases, so far as we know, hold he must take his case as he makes it, and if he cannot make a case without showing he was in fault, he cannot recover or put the burden on the defendant as to plea or proof. *Cay* v. *Winter*, 34 Cal. 153; *Cunningham* v. *Lyness*, 21 Wis. 245, 55 Wis. 406.

*J. W. N. Whitecotton*, for respondent.

Contributory negligence is an affirmative defense and must be alleged and proved by the defendant. *Hough* v. *Railway Co.*, 100 U. S. 213; *Indianapolis, etc., R. R. Co.* v. *Horst*, 93 U. S. 291; *Railroad Co.* v. *Gladman*, 15 Wallace 401; *Anderson* v. *Ogden Ry. Depot Co.*, 8 Utah 128.

Beach on contributory negligence, Sec. 426, where the author cites the decisions of twenty-five American states besides the United States supreme court, and England in support of the doctrine. Shearman & Redfield on Negligence, sec. 109.

The case of *Robinson* v. *Flint & P. M. Ry. Co.*, 79 Mich. 323, cited by appellant, shows that the plaintiff had turned his ox out to graze in the public highway, and it thereby became a trespasser upon the railroad company's

right of way, where it crossed the highway. The ox was not lawfully upon the highway, and the plaintiff was held guilty of contributory negligence. Besides, in Michigan, it is held that the burden is upon the plaintiff to show that he is free from negligence before he can recover. *Detroit, etc., R. R. Co.* v. *Van Steinburg*, 17 Mich. 99; *Lake Shore, etc., R. R. Co.* v. *Miller*, 25 Id. 275; *LeBaron* v. *Detroit, etc., R. R. Co.*, 67 Id. 677.

Is there in this case any issue of contributory negligence? Clearly not, unless in the following: "In this case, the plaintiff alleged that his cow was lawfully on the highway and the defendant denied it." But did not the plaintiff by his evidence make good his allegation? Is it not lawful for a cow to travel a county road to the pasture, when it is the only road by which she can reach the pasture? It will not be seriously claimed that to deny the cow's lawful presence on the road is to charge contributory negligence beyond what would result from the unlawfulness of her presence there. There is no pretense of a general or specific charge of contributory negligence outside of that one general denial. If plaintiff had alleged that the cow was killed without fault or negligence on his part, and defendant had made a general denial, it might be that contributory negligence would have been an issue.

BARTCH, J.:

The plaintiff brought this action to recover damages for the killing of a cow by the defendant on its railroad, and obtained judgment therefor. The appeal is both from the judgment and from an order denying a motion for a new trial. The killing of the cow is not disputed, and the material facts shown by the testimony of the plaintiff are, substantially, that the plaintiff resides on a farm; his house being about a quarter of a mile north

of the Provo river, and 300 yards west of the defendant's railroad track, and 40 yards south of a public road running east and west, and crossing said railroad. He had a lucern meadow about 350 yards east of the track, where he pastured his cows, which were generally driven there by his dog, after they had been turned out on said public road. The road was fenced on both sides to a point 200 yards east of the railroad, and at the railroad crossing it is elevated a little above the general surface, and there is a slight depression below such surface, between the road and a wing fence which extends west from the cattle guard, on the north side of the road. This depression was caused by removing the ground for the grade of the road and railroad, and has gotten into a swampy condition. The wing fence and the cattle guard, on the north side, run nearly parallel with the road, and the railroad track is straight for about a mile north of the crossing. The Union Pacific Railroad is about 80 yards west of the defendant's track. Between 11 and 12 o'clock on the 7th of January, 1895, the day of the accident, the plaintiff turned 12 head of his cattle out into the road,—it being the only way by which they could get to the lucern meadow,—but sent no one to drive them. His dog, however, followed them to a point between the two railroads; and then the plaintiff saw it leave them and come down the road home. Eleven had crossed, and were strung along east of the railroad track, about 10 feet to a rod apart, when the cow in question was struck and killed by the defendant's passenger train, which was running about 40 miles an hour and was late. The engineer sounded the whistle for the crossing about a quarter of a mile north thereof, and then gave a succession of short blasts three or four rods north of the cattle guard. The evidence is conflicting as to how far east of the track the rear cow, of those which had

crossed, was when the cow in question was struck. The plaintiff testified that the distance was a rod. Another of his witnesses thought the cows not more than 50 or 60 yards from the track; and the engineer, one of the defendant's witnesses, that none of them were closer to the track than 20 or 25 yards. The testimony of the defendant tends to show that, when the train was within about 250 feet of the crossing, the cow which was struck first attracted the attention of the engineer by moving upon the track from behind the wing fence on the west side of the cattle guard; that the wing fence (being about 4 or 5 feet high) was made of 6-inch boards, placed from about 6 to 8 inches apart; that after he first blew the whistle he noticed the animals east of the track, but saw none crossing before the one which was struck; and that he applied neither the emergency stop nor the brakes to check the train. The engineer testified that the emergency stop was a very severe application; that its use while running at a high rate of speed would have endangered the lives of the passengers and the safety of the train; that if he had used all the appliances to stop, when he noticed the cow moving behind the wing fence, he could not have averted the accident; and that on the day of the accident there were three regular trains, due between 11 o'clock a. m. and 12:05 p. m., to pass Prospect, a station about a mile and a half or two miles north of the crossing. Such is the evidence, in substance, so far as material to this decision.

The first question presented is whether the railroad company was guilty of negligence. The accident did not happen in a village or a city, but where the company was not limited to any particular rate of speed. It was entitled to run its trains at any and all times to suit the business demands of the people, and afford rapid transit both to passengers and freight. Its train having been

late, it had the right to increase its speed, and a rate of 40 miles per hour did not render it liable to the charge of negligence, under the circumstances of this case. Unless the condition of its road demands it, a railroad company is not required to run its trains at a low rate of speed through a sparsely settled country, or to check the same at ordinary highway crossings, outside of cities and villages, and to do so would greatly interfere with its usefulness as a common carrier. Nor, ordinarily, is it required to lessen speed or stop when cattle are in a highway near the track. When such cattle appear quiet and undisturbed, an engineer is not bound to presume that they will suddenly run upon the track where they will be injured. He is, however, required to exercise ordinary care, skill, and vigilance in managing his train; and if he sees that they are about to step upon the track, into danger, then he must give warning, and use every precaution to avoid injury to them which is consistent with the safety of the passengers and train. If he can, without endangering the safety of the passengers and train, slacken the speed, or stop, and thus avoid an accident, he is bound to do so. In such a crisis, however, his first and paramount duty is to the safety of the passengers; and under circumstances where he cannot stop before striking the stock, he is justified in increasing the speed, if by so doing there be less danger of derailing the train and injuring the passengers. This is so even though such increase of speed may render it more difficult for the stock to escape. It is at all times the duty of those operating a passenger train to look first to the safety of the passengers, and they are held to a very high degree of care. It is imperative upon the engineer to observe the track ahead of the train as constantly as his duties to operate the appliances for running it will permit; and therefore, when an accident occurs, resulting in

the injuring or killing of stock, the essential inquiry is not whether all possible appliances were employed and efforts made to stop the train or check the speed, to avoid the accident, but whether the acts and conduct of the engineer, and those in charge of the train, under the particular facts and circumstances connected with and surrounding the accident, were such as the exercise of ordinary care, skill, and vigilance, and reasonable prudence, demanded, in view of the safety of the passengers, the speed of the train, and the position of the stock. *Robinson* v. *Railroad Co.*, 79 Mich. 323, 44 N. W. 779; *Railroad Co.* v. *Ganote*, 13 Am. & Eng. R. Cas. 519; *Eames* v. *Railroad Co.*, 98 Mass 560; *Kerwhaker* v. *Railroad Co.*, 3 Ohio St. 172; *Railroad Co.* v. *Milton*, 14 B. Mon. 75; *Railroad Co.* v. *Jones*, 11 Am. & Eng. R. Cas. 450; *Darling* v. *Railroad Co.*, 121 Mass. 118; *Smith* v. *Railroad Co.*, 34 Iowa 506; *Railroad Co.* v. *Champ*, 75 Ill. 577; *Railroad Co.* v. *Himes*, 32 Kas. 619.

In the case at bar the defendant's engineeer had a plain view of the track ahead of the train for about a mile, and it appears that, while seeing the stock east of the track, he saw none crossing until the cow which was struck came upon it from her place of concealment. He had sounded the whistle for the crossing, and, upon observing her moving from behind the wing fence, gave a succession of short blasts for the purpose of driving her away from the track, but the train was already too close for her to escape. Even if the engineer had heedlessly endangered the lives of the passengers by an attempt to stop the train by an application of the emergency stop, it is difficult to see how, under the circumstances indicated by the record, he could have avoided striking her. The fair and legitimate conclusion from the evidence is that the cow had stopped behind the wing fence, and,

13 UTAH—21

when the train approached the crossing, darted in front of the train, in an attempt to get to the other cattle, and was killed because the engineer, when he first discovered her danger, was too close to stop the train and avert the accident.  We think his acts and conduct on the occasion in question, as shown by the testimony, were such as would result from the exercise of proper care and reasonable prudence, in view of his paramount duty for the safety of the train and passengers.

If, however, it were admitted that the engineer was negligent in failing to observe the cow in time to stop the train and avoid the injury, still the respondent would not be entitled to recover, because his own testimony shows that he was guilty of negligence which was the proximate cause of the accident.  He turned his cattle upon the public roads, to cross two railroad tracks, unattended by any person, being content to leave them in charge of the dog, which drove them to a point between the two railroads, and then abandoned them, and went home, in view of the respondent, who made no effort to send the dog back, or to drive them across the appellant's track, although he knew it was a dangerous crossing, and that trains passed there frequently.  He watched the dog coming home, and the cattle crossing the railroad, at a distance of 340 yards.  The conclusion seems irresistible that, if some person had been in charge of the cattle when they were abandoned between the railroads, he could, in less time than it took the dog to go over 300 yards home, have driven all of them safely across the track.  The record clearly shows such a want of proper care on the part of the respondent as will preclude a recovery.  Suppose, when the train struck the cow, it had been derailed, and some person killed; would not the act of thus heedlessly turning the stock upon

the highway, unattended, have been characterized as gross negligence? And yet the more serious consequences would not have changed the character of the act. In such event, the only reason why he would not have been criminally responsible is because no consequent mischief was intended by him. A proper regard for the safety of humanity and of property forbids that a person should turn his beasts, which can neither reason nor appreciate danger, out upon the highway, without a keeper, in the vicinity of a railroad crossing; and especially is this true where such person knows that they must cross the track to get to the pasture where their instinct leads them. The sacredness of human life, and common sense, alike dictate this rule. The fact that contributory negligence was not affirmatively pleaded in the answer is not material, in view of the evidence introduced by the plaintiff in attempting to prove his case, it clearly appearing therefrom that his own negligence caused the accident. Generally, contributory negligence, is a matter of defense, and must be alleged and proven by the defendant; but where the testimony on the part of the plaintiff, who seeks to recover damages for injuries resulting from negligence, shows conclusively that his own negligence or want of ordinary care was the proximate cause of the injury, he will not be permitted to recover, even though the answer contains no averment of contributory negligence. This rule is not peculiar to cases of negligence, but extends to all other cases as well; for if, in an action on a promissory note or other debt, it appears from the plaintiff's evidence that he has been paid, he must fail. Beach, Contrib. Neg. § 160; *Hoth* v. *Peters*, 55 Wis. 405, 13 N. W. 219; *Johnson* v. *Railroad Co.*, 5 Duer. 21; *Canal Co.* v. *Bentley*, 66 Pa. St. 30; *Robinson* v. *Railroad Co.*, *supra*; *Gay* v. *Winter*, 34 Cal. 153; *Hoyt* v. *City*

*of Hudson*, 41 Wis. 105; *Railway Co.* v. *Skinner*, 19 Pa. St. 298; *Bennett* v. *Railway Co.*, 19 Wis. 145.

Counsel for the appellant insist that the court erred in charging the jury as follows: "The plaintiff also had the right to that highway, as well as the rest of the public, for their cattle, or for their individual crossing." We thing this instruction, under the facts and circumstances presented in this record was misleading and erroneous. While the plaintiff had the right to a proper use of the highway, in common with the rest of the public, still he had no right to turn his cattle upon the same, recklessly, unguarded, in the vicinity of a dangerous railroad cross-ing, and thus not only expose them to injury, but also endanger human life and the property of the railroad company.

We do not deem it necessary to discuss the other points raised in the record. The judgment is reversed and remanded.

ZANE, C. J., and MINER, J., concur.