WILLIAM E. CLARK, RESPONDENT *v.* OREGON SHORT LINE RAILROAD COMPANY, A CORPORATION, APPELLANT.

*Contributory Negligence—When Available as Defense Without Being Specially Pleaded.*

> Although as a general rule in an action for damages for injuries resulting from negligence, contributory negligence is a matter of defense and must be alleged and proved by defendant, yet where plaintiff's testimony shows that his own negligence or want of ordinary care was the proximate cause of the injury, he will not be permitted to recover even though the answer contains no averment of contributory negligence.[1]

(Decided Nov. 8, 1899.)

Appeal from the Fourth District Court, Utah County, Hon. W. N. Dusenberry, *Judge.*

Action by plaintiff to recover damages for the wrongful and negligent killing of a cow by one of defendant's trains. From a judgment for plaintiff. defendant appealed. *Reversed.*

*P. L. Williams, Esq., Chas. D. Savery, Esq.,* and *J. W. N. Whitecotton, Esq.,* for appellants.

The appellant contends that under the state of facts shown by the testimony, the plaintiff cannot recover, because it appears that the accident was caused entirely by his own negligence, in turning his cow out upon the high-

---

[1] *Bunnell* v. *Ry. Co.,* 13 Utah, 314.

20 Utah—26.

way upon which a railroad track was known to run, unattended.    *Bunnell* v. *R. G. W. Ry. Co.*, 13 Utah 314.

Mr. Beach, in his last edition of his work on Contributory Negligence, at pages 623-4, adopts the language of this decision as the law and in a note uses the following words:
"   *   *   *    But when the testimony on the part of the plaintiff, who seeks to recover damages for injuries resulting from negligence, shows conclusively that his own negligence or want of ordinary care, was the proximate cause of the injury he will not be permitted to recover, even though the answer contains no averment of contributory negligence.    *Bunnell* v. *R. G. W. Ry. Co.*, 13 Utah 323."

We say, therefore, that the evidence in this case wholly fails to show that the defendant was negligent in any particular, while it abundantly shows, that the plaintiff was guilty of the grossest kind of carelessness in turning his cow out upon the railroad track, unattended, and that this was the proximate cause of the injury.    That being true, the trial court ought to have given defendant's request to instruct the jury to return a verdict for the defendant. Having refused to do that, the court ought to have granted defendant's motion for a new trial.

In support of our contention we respectfully cite the following authorities:    *Bunnell* v. *R. G. W. Ry. Co.*, 13 Utah, 314; *Pennsylvania R. Co.* v. *Aspell*, 23 Pa. St. 147; *Freer* v. *Cameron*, 55 Am. Dec. 663 and note; Shearman and Redfield on Negligence, 61; Thompson on Negligence, 1146; Wharton on Negligence, 300; Beach on Contributory Negligence, 3d ed. 14; *Munger* v. *Tonawanda R. Co.*, 4 N. Y. 349.

An especially strong case, and apparently entirely applicable to the facts in the case at bar is that of *Robinson* v. *Flint, etc., R. Co.* 79 Mich. 323 (S. C. 10 Am. St. R. 174); *Perkins* v. *Eastern R. Co.*, 50 Am. Dec. 589;

*Williams* v. *Mich. Cent. R. Co.*, 2 Mich. 259; *Railroad Co.* v. *Skinner*, 19 Pa. St. 298; *Keeney* v. *Ore. Ry. & Nav. Co.*, 24 Pac. 233.

*M. M. Warner, Esq.*, for respondent.

The defendant was negligent. First, in not condemning sufficient land; there, to have its track and trains free from being covered over by branches of trees, growing within six feet of its track on the banks of a cut four or five feet deep, to a height of eight feet or more. Second, in running an extra or special train out from under these trees onto a highway which was extensively traveled and used by the public, at a speed of thirty-five or forty miles an hour, using no precaution whatever to prevent accidents. See *English* v. *Railway Co.*, 13 Utah, 407; *Bitner* v. *Railway Co.*, 4 Utah, 502.

The case of *Olsen* v. *O. S. L. Ry. Co.*, reported in 9 Utah at page 129, is especially in point.

BASKIN, J.

This is an action in which the plaintiff, who is the respondent, seeks to recover the value of a cow alleged to have been killed through the negligence of the appellant in running one of its freight trains. The answer denied the negligence of the appellant alleged by plaintiff. Contributory negligence on the part of the plaintiff was not plead in the answer.

At the close of the testimony the appellant requested the trial court to instruct the jury to return a verdict in favor of defendant, of no cause of action. This request was denied, and the jury returned a verdict in favor of plaintiff for $50.00.

The only error assigned and urged by appellant is, that said request was improperly refused.

It is well settled that the court may withdraw the case from the jury altogether, and direct a verdict for the plaintiff or defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict in opposition to it. *Pool* v. *Southern Pac. Co.,* 20 Utah 210; 58 Pac. 330, and cases cited.

In the case of *Bunnell* v. *Railway Co.,* 13 Utah, 314-323, it is held that, "Generally, contributory negligence, is a matter of defense, and must be alleged and proven by the defendant; but where the testimony on the part of the plaintiff, who seeks to recover damages for injuries resulting from negligence, shows conclusively that his own negligence or want of ordinary care was the proximate cause of the injury, he will not be permitted to recover, even though the answer contains no averment of contributory negligence."

It follows from the foregoing rules, which are well established, that if the evidence in this case clearly shows that the plaintiff was guilty of negligence which, materially contributed to the proximate cause of the injury complained of, then the trial court erred in refusing to instruct the jury as requested by defendant.

J. B. Clark testified on behalf of plaintiff as follows: "I am a brother of the plaintiff. My son brings the cows from the pasture. At the time the cow was killed, she was kept in a ten-acre pasture that lies just south of the highway leading from Pleasant Grove to American Fork. There is a gate opening from the pasture onto the highway—the county road. The highway at this point runs east and west. The railroad track comes onto the high-

way from the south at a point about 100 or 110 yards east of the gate that opens out of the pasture onto the highway."

The son of the former witness testified for plaintiff as follows:

"I knew the cow that was killed. I went down to the pasture for the cows. I went from Pleasant Grove west across the track to the pasture and went in at the gate on the north side, and left the gate open, and the cow that was killed went out. There were six or seven other cows in the pasture, and I went down in the pasture around them to bring them up. The cow that was killed went out into the road and started to turn across the railroad track. When the train struck this cow, I was still down in the pasture, driving up tho other cows. I did not see the train strike the cow. I saw her when I walked along up there. She was lying in the middle of the road dead. I saw the train go by. I was standing down in the pasture, towards the south end of the ten acres. I was after five or six other cows. I opened the gate and left it open for the cow that was killed, and she went out onto the road, where the railroad runs, and the next time I saw her she was dead. The first time I saw the train it was about where it comes into the highway. The train was running faster than a passenger train. There was no one helping me with the cows. If I had heard the train when it was at the depot, and had started up to the crossing, I do not think I could have got half way to the gate, before the cow was struck, the way the train was running. The depot is about three blocks from the crossing. If I had not opened the gate, until I got all the cows up there, I do not think this cow would have got out. The train had gone past before I got the other cows up to the gate. This was not the regular time for a

freight train, and I did not know a special train was coming."

Lydia Walters testified for plaintiff, as follows: "I saw the accident; was about five rods away. * * * No one was in the road with the cow. She was going to cross the track and go up the street. The first I heard of the train was when I heard it whistle out by the station. I was out by the fence. I started to drive the cow away, but I did not get there in time. The cow did not seem alarmed at all. When the whistle blew she stood right there. She started to go across the track when the train struck her."

A railroad has as much right to use special trains as to use regular trains. As to how many or at what time a railroad company shall run trains over its track is not restricted by law. It is a matter of common knowledge that the necessities of railroad transportation requires the frequent use of special trains, and that such trains are liable to pass along the track at any time. Under these circumstances, as said by the present chief justice of this court, in the case of *Bunnell* v. *Railway Co.*, *supra*, "A proper regard for the safety of humanity and of property forbids that a person should turn his beasts, which can neither reason nor appreciate danger, out upon the highway, without a keeper, in the vicinity of a railway crossing; and especially is this true where such person knows they must cross the track to get to the pasture (or as in this case from the pasture to their home) where their instinct leads them."

The accident under consideration would not have occurred, if the gate, near which the cow was standing and evidently at which she was waiting to be let out, had not been left open.

Under the ruling in *Bunnell* v. *Railway Co.*, we are

of the opinion that the evidence clearly shows that the plaintiff was guilty of negligence which materially contributed to the killing of his cow.

The judgment of the court below is reversed, with directions to grant a new trial, and it is ordered that respondent pay the costs.

BARTCH, C. J. and MINER, J. concur.