## WILLIAM FOWLER, Respondent, v. THE PLEASANT VALLEY COAL COMPANY, Appellant.

1. *Contributory Negligence—Nonsuit.*

Plaintiff, an experienced miner, who was working in a mine extracting coal upon a contract whereby he was to do his own timbering, and receive pay by the ton, voluntarily, and without any sudden emergency calling him to do so, on a day when the mine was not working, sat down to smoke under a hanging wall that he knew to be dangerous, and liable to fall at any time, and while he sat there, with friends, smoking and talking about the wall in question, it fell and injured him. *Held*, that the plaintiff was guilty of contributory negligence, and not entitled to recover.

2. *Same.*

Where plaintiff's testimony shows that he was injured by negligently and voluntarily placing himself in a place he knew to be dangerous, and at a time when he was discharging no duty to his employer, he is guilty of contributory negligence, which became a question of law for the court, and a nonsuit, when asked for, should be granted.

3. *Nonsuit—Evidence—Plaintiff's Contributory Negligence.*

In such a case, and where plaintiff's testimony shows that he did not rely upon the foreman's judgment, but all the time continued to believe and rely upon his own judgment that the coal under which he voluntarily sat to smoke and visit with friends was dangerous, and liable to fall at any time without warning, the trial court may, on motion for a nonsuit, consider such testimony true as bears most strongly against the interest of the plaintiff giving it.

(No. 887.   Decided March 1, 1898.)

Appeal from the Third district court, Salt Lake county. A. N. Cherry, *Judge.*

Action by William Fowler against the Pleasant Valley Coal Company. Judgment for plaintiff, and defendant appeals. *Reversed.*

*Bennett, Harkness, Howat & Bradley,* for appellant.

There is no presumption that the plaintiff was using due care, where there is evidence tending to show negligence on his part. In an action for death or injury caused by defendant's negligence, where there is substantial evidence of contributory negligence by the deceased or person injured, it is error to charge that there is a legal presumption that he exercised ordinary care. *Schepers* v. *Depot Co.,* 126 Mo. 665; *Moberly* v. *Railway Co.,* 98 Mo. 183; *Haynes* v. *Trenton,* 123 Mo. 326; *Miller* v. *City of Kansas,* 18 S. W. 914; *Spaulding's Case,* 33 Wis. 582; *Stebbins* v. *Railroad,* 62 Md. 518; *Justice* v. *Lang,* 52 N. Y. 327; *Whitsett* v. *Railroad,* 25 N. W. 107; 1 Greenl. on Ev., Secs. 44, 48; *Whitaker* v. *Morrison,* 44 Am. Dec. 627; Lamson on Presumpt. Ev., rule 120, p. 576; *Lee* v. *Publishers,* 55 Mo. App. 390; *Mynning* v. *Railroad,* 64 Mich. 93; *Rapp* v. *Railroad Co.,* 106 Mo 423; *Hoyt* v. *City of Hudson,* 41 Wis. 105, 111; *Durrell* v. *Johnson* (Neb.), 48 N. W. 890.

*Moyle, Zane & Costigan,* for respondent.

Cited:   *McKee* v. *Tourtellatte,* 44 N. E. R. 1071; *Railway Co* v. *Duvall,* 35 S. W. R. 699–702; *Kane* v. *Railway Co.,* 128 U. S. 91; *Snow* v. *Railway Co.,* 8 Allen 441.

In this case the plaintiff seeks to recover damages for injuries alleged to have been sustained by him while in the employ of the defendant as a coal miner, because the defendant, in violation of its duty, caused a chamber in its mine to be unsafely supported and timbered, and permitted the same to remain in an unsafe condition, in con-

sequence of which negligence coal fell upon and injured him. The answer denied the allegations in the complaint, and alleged that the injury complained of was caused by the negligence of the plaintiff in failing to timber the mine as it was his duty to do, and by negligently placing himself in a known place of danger. It appears from the undisputed testimony that plaintiff was an experienced miner, and was paid by the ton. It was the plaintiff's duty to keep the place where he was working timbered from the face back to the place where he commenced work, and remove all loose coal. The miner furnished his own tools and powder. The company furnished the track for the miner to put down, and the timber which the miner put up to keep himself safe from falling rock. The miner was required to take care of the timber he placed in the mine. The plaintiff testified, in substance: That at the time of the injury he was taking down a part of a projecting pillar about 45 feet from the cross-cut. A track was run in the center of the place to carry out coal and rock, with timbers on each side to prevent coal from falling from overhead. That he was in the act of putting a hole on the left-hand side of the pillar to blow the top down, at a point about six feet from the place where he was working. That the place being driven was about 14 feet wide. That this piece of coal was a slip or seam. That the bottom of it had been shot off. The mine was not working on the day of the accident. A working day in this mine was when coal was being taken out. At this time Mr. Parmlee, the foreman, came, and asked the plaintiff what he was doing. Plaintiff replied that he was going to put a shot in there (referring to the projecting coal pillar), and stated that this slip of coal was liable to fall at any time without warning. Parmlee said it did not matter; that the face was too

wide. He said, "Leave the coal there, and take the track and move it to the left," which would be two or three feet from and along the side of the hanging wall. He said, "Put no more timbers on the left-hand side, but place them on the right-hand side." He said, "The coal there is perfectly safe," and at the same time placed a chalk mark on it at a point about six feet from the face, and told me to leave it, or take my tools out. He said the drift was too wide, and directed it to be made 10 feet wide instead of 14 feet. Plaintiff moved the track, and placed the timbers as directed. Plaintiff then continued to work at the face four days after this conversation, and drove the drift 12 feet from this pillar of coal. Plaintiff was then asked by his counsel the following question: "Now, when Parmlee told you that that coal was safe, did you rely upon that statement of his? A. Yes, sir; I relied that what he said was right. He was the man that was running that mine, and what he said I had to abide by." Four days after this conversation, at a time when the mine was not working, the plaintiff was at the room, cleaning out clod, in order to get ready for work the following day. At this time several friends called in, and they all sat down to smoke. Plaintiff sat down nearly under this projecting piece of coal, and while they were talking, and within five minutes after they sat down, without any warning, the coal fell, and injured the plaintiff. On cross-examination the plaintiff testified that he believed the coal would fall and give no warning; that, if he had to pass there every day, it was not safe for him nor any other man. "Q. You believed that, did you? A. I did. Q. And you continued to believe it? A. I did; yes, sir. Q. You still thought it was not safe? A. I thought it ought to be taken down, because it was liable to slip out at any time without warning." Plaintiff also

testified that he was not thinking of the coal just before it fell. "Q. You thought it was not safe? A. I thought it ought to be taken down, because it was liable to slip without warning, and so continued to believe." At the time Parmlee put the chalk mark on the coal he tried to explain to him that while it was hard it would fall and give no warning. Mr. Edwards, a witness for plaintiff, testified that plaintiff told the foreman at the time that the coal was not safe, and that the foreman said it was safe; that several days after this he was sitting down with the plaintiff, at the time he was injured, under the coal that fell; that at this time, two minutes before the coal fell, Mr. Reese, who was present, asked the plaintiff why he did not take down the piece of coal in question, that it would make a good shot, and that plaintiff replied that he would have taken it down before if the boss had not stopped him. At the close of plaintiff's case defendant moved for a nonsuit on the ground that the undisputed testimony showed that plaintiff was aware of the dangerous condition of the overhanging coal at the time and before the injury, and voluntarily exposed himself to the risk and danger arising from its falling upon him by unnecessarily placing himself under it; and upon the ground that at the time of the accident he was not employed in the occupation of a miner, in behalf of the defendant. Defendant's motion was overruled, and an exception taken. The first assignment of error is based upon this ruling.

After stating the facts, MINER, J., delivered the opinion of the court:

With reference to master and servant the rule is that, if a master gives the servant to understand that he does not consider the risk which the servant is to undertake

one which a prudent person should refuse to undertake, the servant has a right to rely upon the master's judgment, unless his own judgment is so clearly opposed thereto that in fact he does not rely upon the master's judgment. 1 Shear. & R. Neg. § 186. The accident complained of occurred at a time when the mine was not being worked and when the plaintiff was not in the master's immediate employment. Plaintiff was paid by the ton. The coal in question was about 12 feet from the face of the drift where the plaintiff was working. The plaintiff testified that he had been an experienced coal miner for 24 years, and that this slip was liable to come out at any time without warning, and he told the foreman so, and that the foreman replied that it was safe; that, after the foreman told him it was safe, he thought it was. But he afterwards states that he thought the coal there would fall, and give no warning, and, if he had to pass there, it was not safe for him or any other man; that he believed so, and continued to believe so, and thought it should be taken down. Knowing this dangerous condition, he voluntarily sat down under the projecting coal, and while he sat there under it, visiting with friends, and smoking, his attention was called to the coal, and he was asked why he did not take it down. He replied that the boss had forbidden it. While he was still talking and sitting under the coal, with no disturbing circumstances or emergencies confronting him, with no duty calling him to a place he knew was dangerous, the coal fell upon him. On this day and at this time he was not in the master's service. He was not then acting under his command, or engaged in discharging his duty to his employer. He voluntarily assumed, for his own convenience and comfort, the responsibility of selecting that place in which to sit and smoke. He volun-

16 UTAH—23

tarily assumed the risk of the injury that he invited by his own negligent acts and want of reasonable care. If he was in his master's service, and knew the place was dangerous, and could by the use of reasonable care discharge his duty to the master by avoiding the dangerous place, and failed to do so, then he assumed the risk he voluntarily incurred. At the time he took a seat under the coal he was not called upon to act in a sudden emergency. No disturbing circumstances were controlling his actions. He voluntarily sat down under the coal, and thereby exposed himself to the known danger, while enjoying his leisure. It cannot be said he was not thinking of the coal at the time he sat there, for the testimony he offers shows that he must have thought of the coal, because he discussed the propriety of taking it down while he sat under it. The plaintiff's own witness testified to this fact upon the plaintiff's direct case,—that such conversation occurred two minutes before the coal fell. The plaintiff does not dispute this, but says he was not thinking of the coal just before it fell. He was discussing the propriety of taking it down two minutes before it fell, but was not thinking of it just before it fell. A plaintiff should not be allowed to predicate his case for damages upon such a subterfuge. There was no occasion at all for him to sit or be at the point where the accident occurred. The plaintiff's knowledge of the dangerous place at the time of the accident is shown by his own testimony. If there be a contradiction, it arises from the plaintiff's own testimony. In such a case, where a nonsuit is asked, the trial court may consider such testimony true as bears the most strongly against the interest of the plaintiff. The testimony clearly bears the construction that the plaintiff did not rely upon the foreman's judgment, but all the time continued to believe and rely upon his own judgment

that the coal was dangerous, and ought to be taken down. If the contrary theory is correct, then the questions that could have been submitted to the jury were: (1) Did the plaintiff tell the truth when he said he relied upon the foreman's statements that the coal was not dangerous? or (2) Did he tell the truth when he said that from his experience of 24 years as a coal miner he believed, and continued to believe, the coal was dangerous, and liable to fall at any time, without warning? (3) Did he tell the truth when he said he was not thinking of the coal just before it fell, or was the uncontradicted testimony of the witness Edwards true when he said the plaintiff was talking of taking down the coal two minutes before it fell? This testimony seems to negative the right of the plaintiff to recover. Plaintiff's testimony shows that he negligently and voluntarily placed himself in a position he knew to be dangerous, at a time when he was discharging no duty to his employer. Under such circumstances his contributory negligence was a question of law for the court, and the nonsuit asked for should have been granted. McGlynn v. Brodie, 31 Cal. 377; Butte v. Coal Co., 14 Utah 282; Cook v. Mining Co., 12 Utah 57; Bunnell v. Railway Co., 13 Utah 314; Bunt v. Mining Co., 11 Sawy. 178; Bunt v. Mining Co., 138 U. S. 483; Kilroy v. Foss, 161 Mass. 138; Coal Co. v. Muir, 20 Colo. 320; Naylor v. Railway Co., 53 Wis. 661.

The judgment is reversed, and the cause is remanded to the trial court, with directions to set aside the judgment, and to grant the defendant a judgment of nonsuit against the plaintiff.

BARTCH, J., and McCARTY, District Judge, concur.