## BENASH v. BUSINESS MEN'S ASSUR. CO. OF AMERICA.

Circuit Court of Appeals, Eighth Circuit.
March 29, 1928.

No. 7949.

1. **Insurance** ⬅⟹668(1)—**Undisputed evidence that insured returned accident policy to agent for cancellation without having paid first premium held to authorize directed verdict for insurer.**

Where evidence that accident insurance policy, which had been delivered to insured, was returned by him to insurer's agent who wrote policy, with request that policy be canceled and without having paid anything on first year's premium, was undisputed in action on policy for insured's accidental death, court properly directed verdict in favor of insurer after the proof offered by each side was all in.

2. **Trial** ⬅⟹141, 143—**Trial court should direct verdict where evidence is undisputed, or, if conflicting, is so conclusive that court ought to set aside contrary verdict.**

It is the duty of the trial court to direct a verdict at the close of the evidence where the evidence is undisputed or where, though conflicting, it is of so conclusive a character that the court, in the exercise of sound discretion, ought to set aside a verdict in opposition to it.

3. **Insurance** ⬅⟹246—**Parties were at liberty at any time to cancel accident insurance contract by mutual agreement.**

Parties were at liberty at any time to cancel accident insurance contract by mutual agreement; consideration to insurer being relief from further risk.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Marie P. Benash, administratrix of the estate of Arthur Joseph Benash, alias Bennish, against the Business Men's Assurance Company of America. Judgment

for defendant, and plaintiff brings error. Affirmed.

Howard Saxton, of Omaha, Neb. (Leonard A. Hammes, George Evens, and Carl T. Self, all of Omaha, Neb., on the brief), for plaintiff in error.

Solon T. Gilmore, of Kansas City, Mo., (George L. De Lacy, of Omaha, Neb., and John Gilmore, of Kansas City, Mo., on the brief), for defendant in error.

Before WALTER H. SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. This action was brought by plaintiff in error to recover the amount named in an accident life insurance policy issued by defendant in error to Arthur Joseph Benash. It provided that the amount sued for should be paid to his estate by the insurer if his death resulted from bodily injury effected directly, independently, and exclusively of all other causes through accidental means. Insured met his death by falling from a bridge on January 6, 1926, while at work. The policy was dated January 27, 1925, and immediately thereafter it and a receipt of insurer for the premium for the first year were delivered to Benash in South Dakota through Mr. Campbell, the insurer's agent, he having taken the insured's application for the policy. There is no denial of the validity of the policy when issued, but the answer alleged that on or about August 17, 1925, the policy was surrendered and canceled by mutual agreement of the insured and the insurer; and that is the only issue in the case.

[1] It is assigned as error that the court directed a verdict in favor of defendant below after the proof offered by each side was all in. Plaintiff made her case by introducing the policy, which was then in the hands of the insurer, having thereto attached the deceased's application therefor, the insurer's receipt for the first annual premium, dated January 28, 1925, and the admission of insurer that the insured met his death through accidental means within the wording of the policy. Defendant then called E. G. Campbell, who testified that in January, 1925, he was the defendant's agent in South Dakota, and had been such for over two years; that on January 11, 1925, he took insured's application for a policy and sent it to the insurer; later he received from the insurer the policy sued on and its receipt for the first year's premium, both of which he delivered to the insured; that insured did not pay him anything in the transaction; that he assumed liability for the first year's premium and extended credit to insured; that some time prior to August, 1925, he had a conversation with Benash at a garage in Dallas, S. D., and Benash gave him the policy and said he was unable to have it continued, that he thought he would return it to Campbell, that he was going to leave there and wanted to return it. Campbell received the policy from Benash and forwarded it to the insurer. He inclosed with the policy a letter to the insurer of date August 17, 1925, as follows:

"I am inclosing a policy issued to A. J. Bennish. Mr. Bennish has not paid me the premium, and I wondered if you couldn't cancel the policy and credit me with the unearned net.

"Yours,          E. G. Campbell."

On the 25th of that month he received a letter from the insurer saying it would cancel the contract and credit the agent's account with the unearned premium. When Campbell sent the application of insured to the insurer in January, 1925, he did not send the first year's premium with it; he had a charge account with the insurer and the insurer charged him with $18.41, which was its part of the first year's premium, and, when Campbell returned the policy to the insurer in August for cancellation, it gave him credit for the $18.41 that had been charged against him when it issued the policy. The amount of the first year's premium was $52.58, but all above $18.41 belonged to Campbell for his services. On cross-examination he was interrogated and answered as follows:

"Q. And you, in view of the fact that Bennish had not paid you what he owed you, thought you had a right to turn the policy in and ask the company to credit you? A. I did so at his request. I consider I had a right to have the company give me credit; that is, they charged me but gave me credit up to this time just as if I had never had any transaction. I paid for the medical examination. I was charged with that."

When Benash delivered the policy to Campbell in August, he owed Campbell the full amount of the first year's premium; he never paid anything for the policy. At the time of the trial, Campbell had not been in the employ of the insurer for over two years, and was not interested in any way in this litigation. There was further testimony by officers and employees of the company, in corroboration of Campbell, that the policy was sent in by Campbell for cancellation in August, 1925, and was marked "Cancelled" on August 26. They, of course, knew nothing when the policy issued about Campbell's extension of his personal credit to Benash

for the first year's premium, nor the conversation between Benash and Campbell when Benash surrendered the policy to Campbell. There is no other material proof bearing on the issue of cancellation.

[2] Counsel for plaintiff in error insists that the question whether the policy was surrendered by Benash for cancellation should have been submitted to the jury, and that the court erred in not submitting it. We cannot agree with this contention. Benash received the policy from Campbell shortly after it was issued, and he retained it until August following. On the 17th of that month he delivered it back to Campbell. Campbell had extended credit to him for the whole amount of the first premium. He had not paid Campbell anything and when he returned it to Campbell he said he was unable to have it continue, that he was going to leave there and wanted to return it, and Campbell, in returning it to the insurer for cancellation, testified he did so at the request of Benash. No other rational explanation of the conduct of Benash and no other reasonable conclusion can be drawn therefrom and from the testimony than an intention and purpose on the part of Benash, when he delivered the policy to Campbell in August, that he was returning it for cancellation; and a finding of the jury to the contrary would have been without support and against all of the proof on that issue. The facts brought the case within the rule, often stated: "It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, ought to set aside a verdict in opposition to it." New Amsterdam Casualty Co. v. Farmers' Co-Op. Union (C. C. A.) 2 F.(2d) 214. This case falls within the first class.

[3] It is a waste of effort to argue that the insurer was bound and estopped by its receipt for the first annual premium and by reason thereof liable on the policy at the time of Benash's death. Liability is conceded up to the time of cancellation. The parties were at liberty at any time to cancel the contract by mutual agreement. If Benash had paid the whole premium to Campbell, he would have been entitled to a return of the unearned part. He relieved himself of the credit extended to him by Campbell. The consideration to the insurer was relief from further risk.

Affirmed.