**DAVIS v. F. W. WOOLWORTH CO.**

No. 528.

Circuit Court of Appeals, Tenth Circuit.
July 5, 1932.

Rehearing Denied Aug. 2, 1932.

See, also (C. C. A.) 54 F.(2d) 366.

Charles W. Pennel, of Bartlesville, Okl., for appellant.

Richard K. Bridges, of Tulsa, Okl., for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

On the first trial of this case there was a verdict and judgment in favor of appellant

Davis. It was reversed on the ground appellant, plaintiff below, was clearly guilty of contributory negligence. (C. C. A.) 41 F.(2d) 342.

The plaintiff, Davis, sued for damages on account of personal injuries which he received when he fell down an elevator shaft from the second to the first floor in a building that was leased and occupied by appellee in the town of Bartlesville, Okl. From the allegations of the complaint and the proof it appears that the elevator was not for passenger service but was for carrying goods between the two floors. It had automatic doors which opened when the elevator reached the floor and closed when it left. It got out of order and continued in that condition for several months, the difficulty being that the door would not open and close automatically but had to be moved by hand. Davis was informed of this condition and operated the elevator accordingly. He did general work about the store. The store opened for customers at 8 o'clock in the morning, but the employees, of course, arrived a little earlier. On the morning of September 27, 1928, he went up the stairway to the second floor for the purpose apparently of laying aside a pair of shoes and opening a window on that floor. He was the only witness to the accident. He testified he saw the gate or door to the elevator was up as he passed it to lay aside the shoes and open the window; when he had done so he returned to the elevator shaft, stepped in, and fell down the shaft. In his complaint, verified by him under oath, he "approached said elevator shaft hurriedly and seeing the door open assumed, as he had a right to assume, that the elevator platform was at the second floor landing and he entered said shaftway and attempted to step upon said platform to open said window (in the shaft) and that the elevator being lowered to the first floor as aforesaid, that he fell down said elevator shaftway a distance of approximately eighteen feet," and received the injuries complained of. This appeal is from the second trial at which the court, following our opinion upon the former appeal, directed the jury to return a verdict in favor of defendant. On the first trial Davis testified in his own behalf as follows:

"Q. Then on the 27th day of this last September though knowing that and without looking to see if the elevator was there, you ran around the corner hurriedly and stepped into the shaft, is that right? A. That is right.

"Q. Did you look to see whether the elevator was there? A. No, sir.

"Q. Is it so dark in there (speaking of the elevator shaft) if you look you can't see whether the elevator is there or not? A. If you went right to it, and up to it you could see, yes, sir."

It was upon testimony of this sort on the first trial that this court held that Davis was guilty of contributory negligence. There can be no doubt that on the second trial Davis completely changed his testimony in that respect. He did testify, however, on the first trial that he passed the elevator shaft before he laid his shoes on a table, and as he passed he noticed that the elevator door was up and that he thought the elevator was there. On the second trial he testified that after he raised the window he came "around the corner and saw what I thought was the elevator. * * * I was looking for the floor of the elevator and thought I saw it. * * * The door was open, and I thought I saw the elevator. * * * As I stepped around I still thought I saw that elevator. * * * I looked in there and saw those doors open, and thought I saw the elevator."

"Q. Did you look to see whether the elevator was there or not? A. Naturally, I did; I looked in there. * * *

"When I first came up the steps and went down there I looked in there and thought I saw the elevator.

"Q. Did you look to see whether it was there or not? A. Yes, sir.

"Q. What were you looking for in the elevator shaft? A. I looked for the elevator. * * *

"Did you look for the elevator the second time you came before you stepped in? A. I thought I saw the elevator both times I looked. * * *

"And I wouldn't have went up there if I hadn't thought I had seen the elevator, but I thought I saw it."

So he repeatedly testified on the second trial that he looked for the elevator and thought he saw it, whereas on the first trial he testified positively that he did not look to see whether the elevator was there. When the case was here on the first appeal, we said among other things: "The physical facts make it clear that plaintiff is correct when he says he could have seen the elevator was not there if he had looked when he was 'right to it'; that is, before he stepped into the shaft."

From his repeated testimony on the sec-

ond trial that he looked before he stepped into the shaft to see if the elevator was there and thought he saw it, it cannot be avoided that by that testimony he was seeking to escape the damaging effect of his testimony on the first trial that he did not look to see if the elevator was there. The question arises: What consideration shall be given to the testimony of the plaintiff on the second trial which tended to show greater care on his part than did his testimony on the first trial?

In his complaint, which he verified under oath, he alleged "that he put his shoes aside, raised the window, and then approached the shaft hurriedly, saw the door open, assumed, as he had a right to assume that the elevator was at that landing, and thereupon stepped into the shaft." And then in his testimony on the first trial swore positively in answer to a direct question that he did not look to see whether the elevator was at that floor.

In Casey v. Northern Pac. R. Co., 60 Mont. 56, 198 P. 141, 145, it is said: "It cannot be unfair to this plaintiff to deal with his case from the standpoint of his own statements. A party testifying in his own behalf has no right to be deliberately self-contradictory, and whenever he is so the courts are justified in judging his case from that version of his testimony which is least favorable to him."

In Atlanta Ry. & Power Co. v. Owens, 119 Ga. 833, 47 S. E. 213, 214, it is said: "If a person testify in his own behalf, and there are material conflicts and contradictions in his testimony, he is not entitled to recover if he be the plaintiff, unless that portion of his testimony which is least favorable to his contention is of such a character as to authorize a recovery in his behalf. The rule just referred to was first laid down in the case of Western & Atlantic R. Co. v. Evans, 96 Ga. 481, 23 S. E. 494. It was recognized and approved in Freyermuth v. Railroad Co., 107 Ga. 32, 32 S. E. 668, and Southern Bank v. Goette, 108 Ga. 796 (2), 33 S. E. 974."

In Fowler v. Pleasant Valley Coal Co., 16 Utah, 348, 52 P. 594, 596, it is said: "The plaintiff's knowledge of the dangerous place at the time of the accident is shown by his own testimony. If there be a contradiction, it arises from the plaintiff's own testimony.

In such a case, where a nonsuit is asked, the trial court may consider such testimony true as bears the most strongly against the interest of the plaintiff." ·

The plaintiff's testimony is not only uncorroborated, but it is contradicted by his former testimony and by all the facts and circumstances of the case as we endeavored to make clear in the former decision of this court. It is said such conduct is not fair dealing with the court and jury and ought not to have weight.

■ There is an additional reason why the judgment of the trial court should be affirmed: The plaintiff testified at the second trial, as he did at the first, that if he had looked closely, he could have seen that the elevator was not there. We quote from his evidence at the second trial:

"Q. I will ask you if at the former trial you were asked this question and gave this answer: 'Q. Is it so dark in there if you look you can't see whether the elevator is there or not? A. If you went right to it, and up to it you could see, yes, sir.' A. That is just the same thing I got through saying.

"Q. That is true then; that you could see if you looked? A. Yes, sir, but it was dark enough that I made a mistake.

· "The Court: There is no use quibbling about this matter. You said you testified to that before. What you mean is if you had walked up there and stopped and looked?

"A. If I had went down that hall-way there and looked real close I guess I could have saw the elevator wasn't there."

■ This admission, made on the present trial, brings the case within the rule announced in the first opinion in this case, that one cannot recover where the injury occurs by reason of the failure of the plaintiff to make ordinary use of his faculties.

■ In view of the many decisions on this subject, we are constrained to hold that the right of the plaintiff below to go to the jury on his diametrically opposed evidence on the vital question in this case, uncorroborated, leaves no room for doubt that the action of the trial court in directing a verdict was right and must be affirmed.