**WHEELER v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

No. 9512.

Circuit Court of Appeals, Eighth Circuit.

Feb. 3, 1933.

D. D. Staples and Paul H. Williams, both of Des Moines, Iowa, for appellant.

Donald D. Holdoegel, of Des Moines, Iowa (Robert J. Bannister, and Stipp, Perry, Bannister & Starzinger, all of Des Moines, Iowa, on the brief), for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

The appellee as plaintiff brought this action against appellant for the recovery of damages on account of breach of contract. The parties will be referred to as they were designated in the lower court.

Prior to July 12, 1924, the Youngberg Construction Company, not a corporation but a trade-name, was engaged in the construction of certain roads, viaducts, culverts, and bridges under contract, in the states of North and South Dakota. The plaintiff, Fidelity & Deposit Company, had executed numerous bonds for this company, guaranteeing its performance of the construction contracts. A large number of claims against the Youngberg Construction Company for labor and material employed and used in the performance of these construction contracts were being pressed for payment, which that company was unable to meet. It was the claim of the surety company that the defendant, Wheeler, was a partner in the construction company. A Mr. Smith, representing the surety company, conferred with defendant concerning these pressing obligations, and, called as a witness for plaintiff, testified: "I told Mr. Wheeler that it was my idea, from the investigation I had made, that he was a partner in the Youngberg Construction Company, and I asked him to take this burden off our hands, and eventually told him that unless it could be done on friendly terms, we would have to insist on it in the courts."

A second conference was held at the invitation of Mr. Wheeler. At this second conference, held between the defendant and a representative of the plaintiff in Minneapolis, Minn., in July, 1924, a contract was signed, the validity of which was sustained by this court in Fidelity & Deposit Company v.

Wheeler, 34 F.(2d) 892, where the contract is set out in extenso. This contract obligated defendant to secure releases and acquittances from the creditors of the Youngberg Construction Company, created in carrying out the construction contracts on which the plaintiff was surety.

Defendant having failed to secure releases of the claims against Youngberg Construction Company, this suit for damages followed.

Defendant answered, alleging in effect that, while he had signed the contract, he had done so under an understanding that he might, within ninety days next ensuing, investigate the affairs of the Youngberg Construction Company and present this contract to his attorney, and thereupon, within the period of ninety days, determine whether or not the contract should become operative and binding upon him; that, upon investigation of the affairs of Youngberg Construction Company, he refused to enter into the contract or consent thereto, and so notified plaintiff by letter on October 4, 1924, within the ninety-day period.

On trial of the action, plaintiff proved the signing and delivery of the contract, proved its nonperformance on behalf of the defendant, and proved without dispute the amount of damages sustained by it.

At the second conference, Mr. Smith prepared a letter which he handed to the defendant with the unsigned contract. Defendant thereupon signed the contract and retained the letter. This letter reads as follows:

"July 12, 1924.

"Mr. W. W. Wheeler, Minneapolis, Minn.

"Dear Sir: The purpose of this letter is to record an agreement between yourself and the undersigned as the representative (of) the Fidelity & Deposit Company of Baltimore, dealing with the Youngberg Construction Co.

"It is understood that you may submit the above described agreement to your attorney, and he may draft any changes or additions to the same which he regards as necessary for the protection of your interests, except that it is understood that he may not make any change therein which will relieve you from obligation to pay all claims made against the Fidelity & Deposit Company, or from your obligation to save said Fidelity and Deposit Company harmless from any claim of litigation under said bonds. It is further understood that this letter will not relieve the abso-lute obligation of the Fidelity & Deposit Company to pay $1750.00, as therein agreed.

"Yours very truly,

"St. Clair Smith."

It was the contention of the defendant in the lower court, and he urges here that, in addition to this letter, there was an oral agreement to the effect that the defendant should have ninety days after the execution and delivery of the contract in which to determine whether or not he should be bound thereby.

At the close of all the testimony, counsel for plaintiff interposed three separate motions to strike from the record the testimony of certain witnesses relative to an oral agreement alleged to have been made between plaintiff and defendant at the time of the signing of the contract and letter on July 12, 1924, upon the ground that they tended to vary, contradict, and impeach written contracts. In addition to these motions, counsel for plaintiff at the same time submitted the following motion for a directed verdict:

"And subject to the above and foregoing motions the plaintiff moves the court to instruct the jury to return a verdict in favor of the plaintiff for the amount of the approved payments made by this plaintiff, with interest thereon from the dates of said several payments, on each and all of the following grounds, to-wit:

"1. The defendant has failed to prove any defense to the contract Exhibit A, or any cause of action founded thereon, and has failed to offer and introduce any competent testimony in any wise impeaching said contract or varying the obligations expressed therein.

"2. For the reason that the defendant, by his own testimony, has admitted the execution of Exhibit A, and has failed to offer or introduce any competent testimony in any wise challenging or impeaching the contracts Exhibit A and Exhibit A–1; that all testimony offered by the defendant, tending to vary, contradict or impeach Exhibits A and A–1, or either of them, is incompetent as being within the parol evidence rule, and thus tending to impeach or contradict the written contracts Exhibits A and A–1.

"3. For the reason that under all competent evidence the plaintiff is entitled to recover the amount prayed in its petition, as by proof of payment made, with interest thereon, from the several dates of said payment.

"4. For the reason that if the jury should return a verdict against the plaintiff it would be the duty of the court to set the same aside,

as contrary to law and contrary to the evidence."

In passing upon these motions, the court said: "The motion to direct a verdict will be sustained."

The court then directed the jury to return a verdict in favor of the plaintiff for the amount confessedly due if the contract ever became effective. From the judgment entered on this verdict, defendant prosecutes this appeal.

In argument, counsel for defendant say that the assignments of error can be summed up under the same argument, "for the reason that each error is based upon the same fundamental idea had by the trial court, namely, that it is a violation of the parol evidence rule to admit or to consider evidence which shows that the contract was delivered subject to certain conditions was, therefore, never in existence. It necessarily follows that if the court erred in excluding the evidence concerning the conditional delivery, as such was the only defense, he erred in directing the jury to return a verdict against the defendant."

A perusal of the record not only shows that the lower court did not refuse to receive defendant's evidence on the issue of conditional delivery, but while three motions were interposed by counsel for plaintiff at the close of all the evidence to strike such evidence from the record, none of these motions was granted, so that it cannot be said that the court excluded any evidence offered by the defendant on the issue of conditional delivery. While the four motions were pending before the court, the court specifically said, "The motion to direct a verdict will be sustained."

■ In the assignments of error it is charged that the court erred in sustaining the second ground of plaintiff's motion for a directed verdict, which was to the effect that all the testimony offered by defendant tending to vary, contradict, or impeach Exhibits A and A-1 was incompetent as being within the parol evidence rule. It is observed, however, that the motion contained four grounds, and we cannot say that the court sustained the motion on the second ground to the exclusion of the other three, and, if any of the grounds stated in the motion were good, then the action of the court must be sustained.

■ The motion clearly challenged the sufficiency of the evidence to sustain defendant's defense. Certainly, if on all the evidence, including that introduced by the defendant

for the purpose of showing a conditional delivery of the contract, a verdict should have been directed for the plaintiff, then the defendant was not prejudiced whatever the views of the court may have been as to the competency of this evidence. We repeat that there is nothing in the record to show that the court did not consider all this evidence. Considering all the evidence in the light most favorable to the defendant, was it such that all reasonable men must have reached the same conclusion? If it was, then the court should have directed a verdict, but if, on the other hand, there was sufficient substantial evidence going to sustain defendant's defense, so that fair-minded men might reasonably have reached different conclusions, then a verdict should not have been directed. Farmers' Nat. Bank v. Missouri Livestock Commission Co. (C. C. A. 8) 53 F.(2d) 991; Self v. New York Life Ins. Co. (C. C. A. 8) 56 F.(2d) 364; Wharton v. Ætna Life Ins. Co. (C. C. A. 8) 48 F.(2d) 37; Illinois Power & Light Corp. v. Hurley (C. C. A. 8) 49 F.(2d) 681; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

■ While it is a general rule that, in considering a motion for a directed verdict, the evidence produced by the party against whom the verdict has been directed should be considered in its most favorable light, yet, after all, there must be substantial evidence in support of an issue in order to entitle a litigant to have that issue submitted to a jury. And, even where the evidence is conflicting, if it is of so conclusive a character that the court, in the exercise of sound judicial discretion, would set aside a verdict in opposition to it, then it is the duty of the court to direct a verdict. St. Louis-San Francisco R. Co. v. Baehler (C. C. A. 8) 26 F.(2d) 26; Business Men's Assur. Co. v. Scott (C. C. A. 8) 17 F.(2d) 4; Benash v. Business Men's Assur. Co. (C. C. A. 8) 25 F.(2d) 423; Andresen v. Kaercher (C. C. A. 8) 38 F.(2d) 462.

■ Where, as in this case, a party testifies in his own behalf, he is not entitled to go to the jury on an issue unless that portion of his own testimony which is least favorable to his contention is of such a character as will sustain a verdict in his favor on that issue. Davis v. F. W. Woolworth Co. (C. C. A. 10) 60 F.(2d) 344; Casey v. Northern Pacific R. Co., 60 Mont. 56, 198 P. 141, 145; Atlanta Railway & Power Co. v. Owens, 119 Ga. 833, 47 S. E. 213; Western & Atlantic R. Co. v. Evans, 96 Ga. 481, 23 S. E. 494; Freyermuth v. South Bound Railroad Co., 107 Ga. 31, 32

S. E. 668; Fowler v. Pleasant Valley Coal Co., 16 Utah, 348, 52 P. 594.

In Casey v. Northern Pacific R. Co., supra, the rule is stated by the Supreme Court of Montana as follows: "It cannot be unfair to this plaintiff to deal with his case from the standpoint of his own statements. A party testifying in his own behalf has no right to be deliberately self-contradictory, and whenever he is so the courts are justified in judging his case from that version of his testimony which is least favorable to him."

So, in the instant case, the defendant had the burden of proof of establishing his affirmative defense by a preponderance of the evidence. Concerning the conference at which he signed the contract, known in the record as Exhibit A, he testified in his own behalf: "I wanted to submit it to my attorney, and I wanted ninety days, and it was given me. * * * And I signed that paper (Exhibit A) that they would give me ninety days longer. I wanted ninety days to look the matter up, and I did not want to sign the paper until I did have time to look it up, and then they gave me the ninety days. Mr. Smith gave me the ninety days. He said that was all right, they would give me ninety days, and you have that letter (Exhibit A–1) I think to that effect. I signed the contract after I had this talk with Mr. Smith, giving me the ninety days."

This is substantially all of defendant's testimony on this question.

The witness Bawden, testifying for the defendant, said that he was present at the conference in Minneapolis when the contract was signed; that there was considerable discussion as to the amount of money that would be paid by the bonding company to whoever obtained the claims and obtained the settlement; that the principal discussion settled around the question whether Mr. Wheeler would have an opportunity, after signing this contract, to present it to his attorney for his advice; that Mr. Wheeler repeatedly said he would not sign this contract unless he had the opportunity of submitting it to his counsel, and he was to have ninety days, "or stated he wanted ninety days in which to do so, either to go through with the contract or refuse to. He wanted ninety days in which to determine the amount of claims, whether or not it was possible to settle them, and the amount. Mr. Smith stated it was rather hard to get us all together again. He demanded that the contract be signed at that time, or he would start suit. Either the contract would be signed

or he would start suit." The witness was then asked:

"Q. That is the conclusion you reached in your mind. Now what makes you reach that conclusion? What did Smith say? A. Mr. Smith said he would give him a letter to that effect."

Counsel asked the witness a leading question, and the court intervened, saying:

"He went further and he said that Smith said he would give him a letter to that effect. Is that what you meant to say? A. Yes.

"The Court: He answered that. Now what else do you want. Anything else said about that? Go ahead and state what Mr. Smith said, as you remember it, or the substance of it. A. Well, I would say that was the substance of it.

"Q. Then you say the substance of it was that Mr. Wheeler asked for ninety days in which to show the contract to his counsel, and that he might investigate the condition of the Youngberg indebtedness? A. Yes, sir.

"Q. And then Mr. Smith said he would give him a letter to that effect? A. Yes, sir."

On cross-examination, the witness testified that he was in the employ of the defendant since 1919; that after July 12, 1924, "I supervised the buying up of those claims at Mr. Wheeler's direction. He gave me those instructions while he was in Minneapolis and wrote me afterwards to proceed with the buying up of the claims."

George E. Youngberg, testifying for the defendant, said that he was present when Exhibit A was signed by the defendant in Minneapolis, and that Wheeler strenuously objected to signing the contract without having the advice of his attorney; that "Mr. Wheeler said to Mr. Smith that he did not want to sign that contract until he had the advice of his attorney, for the reason that he wanted to investigate the matter further. I don't recollect what Mr. Smith said about it."

There is no claim of fraud, mistake, misrepresentation, or duress in this case. The claim is that there was a conditional delivery of the contract. It is clear from the record that defendant was objecting to signing the contract until he had submitted it to his attorney; but what evidence is there that the plaintiff ever agreed that the defendant should have ninety days in which to determine whether or not he should become obligated under the contract? Defendant testified to the conclusion that "I signed that paper that they

566

would give me ninety days longer." It must be remembered that Smith had been demanding settlement of these claims from Wheeler, claiming that he was primarily liable therefor, and the paper, Exhibit A, gave him ninety days in which to secure releases of them. This testimony refers to the nature of the contract which he signed, and not to any oral agreement. Then he testifies that he wanted ninety days to look the matter up, and that they gave him the ninety days, but that apparently is the ninety-day period referred to in the contract. But, further, defendant testified that Smith, representing the surety company, said to him, "They would give me ninety days, and you have that letter I think to that effect." Here, again, the witness is giving his construction of the written instrument, to wit, the letter. Certainly, there is nothing in the defendant's testimony that would sustain a verdict in his favor on his contention that there was an oral agreement to the effect that he was to have ninety days after the signing of the contract within which to determine whether or not he should be bound thereby.

Turning now to the testimony of Mr. Bawden, it is again clear that the defendant wanted to submit the contract to his attorney, and that he wanted ninety days, but there is nothing in this testimony, except the conclusion of the witness, to the effect that Smith ever agreed that the defendant should have ninety days in which to determine whether to become bound by the contract. Again, it appears from the testimony of this witness: "Mr. Smith said he would give him a letter to that effect." The letter is in the record, and, of course, speaks for itself; but it does not sustain the conclusion or interpretation put upon it by this witness. This testimony is significant, however, as indicating that there was but one supplemental agreement, and that was the one shown by the letter, Exhibit A–1.

It appears that immediately following the execution of this contract of July 12, 1924, the defendant instructed the witness Bawden to proceed with the buying of the claims. In other words, the defendant did not wait ninety days to determine whether or not he should be bound by the contract, but began at once to buy up these claims so that he might release and hold harmless the surety company therefrom. If he had such a period of time, apparently he was not taking advantage of it, but proceeded at once to perform under the contract. He also received and accepted the letter, Exhibit A–1. These contemporaneous

acts of the parties conclusively show the interpretation which defendant then placed upon this contract. Either there was no conditional delivery of the contract, or defendant, by his action, converted the conditional delivery into an absolute one. These acts were in partial performance of the contract and are of compelling significance. City of Wichita v. Wichita Water Co. (C. C. A. 8) 222 F. 789; Barber Asphalt Paving Co. v. City of St. Paul (C. C. A. 8) 224 F. 842; Lowrey v. Hawaii, 206 U. S. 206, 27 S. Ct. 622, 51 L. Ed. 1026.

It is also clear that this contention of defendant is an absurdity in view of the terms of the contract. The contract is dated July 12, 1924, and under its terms the defendant agreed to secure releases of the claims against the Youngberg Construction Company within a period of ninety days from that date. His contention that he had ninety days within which to decide whether he should be bound under the contract is, of course, entirely inconsistent with this written provision of the contract, which limited the time of its performance to ninety days; and his own witness says that Smith said he would give him a letter, which is exactly what he did do, the letter, Exhibit A–1. His contention is also inconsistent with the provisions of Exhibit A–1.

While the testimony for the party in whose favor a verdict has been directed is not often important in considering the propriety of the action of the court in directing a verdict, yet, where such evidence is undisputed, it must be considered. The testimony of Mr. Smith is at least not directly contradicted by the defendant or any of his witnesses. It appears without dispute that, even prior to the conference at Minneapolis at which the contract was signed, Smith had told defendant that from the investigation which he had made he was convinced that defendant was a partner in the Youngberg Construction Company, and the witness says: "I asked him to take this burden off our hands, and eventually told him that unless it could be done on friendly terms, we would have to insist on it in the courts."

Following this, the second conference was held at the invitation of defendant. Some of the provisions of the contract as prepared were changed at the request of the defendant. For instance, the period within which defendant was required to secure the releases was changed from thirty days to ninety days. Mr. Smith further testifies with reference to the conference at Minneapolis: "Finally Mr.

Wheeler said he wanted to talk to me. We stepped into that office which was partitioned off. Mr. Wheeler told me he was going back to Des Moines within a few days, and he wanted to take this contract to Des Moines, where Mr. Harvison was, and wanted to confer with him about it. I told him then that we never would get together again; that the Youngbergs were there, that Mr. Wheeler was there, and I was there, and if we were going to consummate this matter, it would have to be consummated that day. I said, so far as the form of the agreement is concerned, the only thing in which I am interested is that the Fidelity & Deposit Company be saved harmless, and if your counsel wants to make changes in this agreement to protect your interest other than that, it will be satisfactory to me, and I am willing to write a letter to that effect. Following that, I drew the additional paragraphs which appear on the contract, and this letter, and handed the agreement and the letter to Mr. Wheeler, and he signed them at that time. The letter and the contract were signed contemporaneously. Mr. Wheeler signed the contract, and accepted the letter."

This testimony is in effect repeated on cross-examination, the witness, among other things, testifying: "Q. You told him then in that connection that you had to settle the contract now or never? A. Yes, sir."

Further, the witness, on cross-examination, said: "I merely stated to Mr. Wheeler my position that I would hold my proposition open no longer than that day; that we were there to make our settlement of our differences then or we would not make them, and I remember this letter covered my idea of what he could do with his attorney."

As we have already observed, this testimony is not contradicted by Wheeler, nor by any one else. It is corroborated by and consistent with the documents Exhibit A and Exhibit A–1, with all the surrounding facts and circumstances, and with the contemporaneous and subsequent acts of the parties, including the subsequent acts of the defendant.

The evidence in this case is of such a conclusive character that the lower court, in the exercise of its judicial discretion, should have set aside a verdict against it. We conclude, therefore, that there is no substantial testimony to sustain the defendant's contention in this case, and the court correctly directed a verdict for the plaintiff.

The judgment appealed from is affirmed.