## NUTTALL et al. v. DENVER & R. G. W. R. CO. et al.

No. 6140.  Decided Feb. 19, 1940.  (99 P. 2d 15.)

*McCullough & Ashton,* of Salt Lake City, for appellants.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondents.

JONES, District Judge.

Quentin Glenn Nuttall was fatally injured as the result of an automobile-train collision within the corporate limits of Salt Lake City during the early morning hours of Feb-

ruary 21, 1935. Appellants commenced this action as the surviving heirs at law of the deceased against respondents to recover damages for the alleged wrongful death of the husband and father. Upon the conclusion of the taking of evidence the trial court granted respondents' motion for a directed verdict and caused to be entered up a judgment of dismissal of the action. Appellants appeal.

Respondent has interposed a motion to dismiss the appeal on several grounds, but an examination of the record has convinced this court that appellants are entitled to have this action determined on its merits. The motion to dismiss is, therefore, denied.

The ultimate question to be determined is whether or not there is sufficient evidence in the record of the alleged contributory negligence of the deceased to justify the trial court in directing a verdict.

The undisputed facts are: that the accident took place at 8th South and 4th West Streets with the deceased traveling west and the train moving south; that the deceased was familiar with this particular intersection having driven over it at night several times each week for some time; that the visibility was poor due to the mist and rain; that the usual railroad crossing signs were in position at this intersection; that the train in question was required to come to a complete stop at 9th South before proceeding across the main line tracks of the Union Pacific Railroad; that the streets in question were 132 feet wide and the blocks 660 feet long; that a 350 watt street arc light was burning at the southeast portion of the intersection; that the train in question was being operated on tracks situated along the west side of said 4th West Street.

The complaint alleges that defendant failed to ring the bell or sound the whistle as required by law and that the train was being operated just prior to the collision at a rate of speed in excess of the 12 mile an hour fixed by city ordinance. Evidence was presented in support of such allegations.

We shall now proceed to examine the testimony given by appellants' (plaintiffs') own witnesses relating to the alleged contributory negligence of the deceased, in order to determine whether or not the deceased used that degree of care required of him as he approached the crossing in question.

Edward F. Gini was the first witness. He testified that a person driving west on 8th South would ordinarily have an unobstructed view to the depot at 3d South where the train in question started, from a point 70 or 80 feet east of the railroad tracks. Also, that there were places east of this point where a traveler could see, beyond a house and other obstructions to the view situated on the northeast corner of the intersection, toward the railroad track in question northerly and over to 4th West Street.

Clarence Giaque was the next witness. He was employed at a place of business one block south from the intersection in question at the time of the accident. He heard the impact, and saw the headlight burning on the engine where it had come to a stop 240 feet south of 8th South Street. The deceased's car was then on the cow catcher facing west. It was raining at that time and the atmosphere just a little misty. He further testified that the direct flare of the locomotive headlight extended about 150 feet.

Larry Makomel testified that he saw the collision from a point near 471 West 8th South (said point being at a greater distance from the approaching locomotive than was the deceased as he approached the intersection). The witness saw what appeared to be a little spot light suspended over where the tracks would be just as the deceased passed the east sidewalk of 4th West, "it was the train, of course, coming south and I saw a little spot of light and pretty soon I saw it again just like something coming right through the smoke clouds, there was fog and rain, it just came right through it, once an open light, great big light at once, about 25 feet north of the point of impact—yes, that spot light drawed my attention, I knew there was a train coming." The witness could see

the tail light on deceased's car, the light from the car's headlights after the accident pointing westerly, as well at the cab lights on the engine from where he stood after it had been brought to a stop. He further testified that deceased was traveling about 10 miles per hour while the train was doing about 30 or 35 miles per hour as it came out of the fog.

Don Alexander, the next witness, was in the middle of 4th West Street on the north side of 9th South when he first saw the engine headlight which was then about a block and a half or two blocks away from him. He then walked back to the sidewalk and started north on 4th West Street. He was walking north in a somewhat hesitant manner when he heard the crash. He saw the tail light on deceased's car burning at that moment. The train's headlight at the moment of impact looked like a large candle light suspended in the air with no rays coming from the light. The visibility was poor.

Sid Spencer was plaintiffs' last witness on this subject. He testified that it was extremely dark and very difficult to see far ahead in the vicinity of the accident shortly after the collision. That it was foggy and misty.

Appellants, in their brief, concede that two of their witnesses testified to seeing a light on the track a few moments before the collision but insist that the mere fact that the deceased could have seen that light does not establish contributory negligence, as a matter of law, and that even though deceased had believed that the approaching light was a train, he may still have acted as a reasonable and prudent man in attempting to cross the tracks. Or, to state it another way, it is maintained that even though the sole inference to be drawn from the evidence is to the effect that the deceased could and should have seen the headlight of the approaching train as others did, yet that he should not be charged with contributory negligence as a matter of law because said deceased had the right to assume that the train was proceeding at a law-

ful rate when he determined to cross in front of it. The following cases are cited in support of this contention: *Grand Trunk Western Railway Co.* v. *Reynolds,* 175 Ind. 161, 92 N. E. 733, 93 N. E. 850; *New York Central R. R.* v. *DeLeury,* 100 Ind. App. 140, 192 N. E. 125; *Baker* v. *Baltimore & O. S. W. R. Co.,* 61 Ind. App. 454, 112 N. E. 27; *Cleveland, C., C. & St. L. R. Co.* v. *Lynn,* 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017; *Payne* v. *Vise,* 84 Ind. App. 1, 135 N. E. 585; *Pittsburgh, C., C. & St. L. R. R. Co.* v. *Dove,* 184 Ind. 447, 111 N. E. 609; *Texas & N. O. R. Co.* v. *Harrington,* Tex. Com. App., 235 S. W. 188; *St. Louis, etc., R. Co.* v. *Whitfield,* 155 Ark. 560, 245 S. W. 323.

In each of the cited Indiana cases there was a general verdict together with special interrogatories, and the appeal appears to have been taken either from an order denying or granting a judgment, notwithstanding the general verdict. These cases are distinguishable from the case at bar on both the law and the facts. In determining the questions presented the appellate tribunal took the view that it was bound as to the facts by the answers submitted by the jury to the special interrogatories in considering whether said answers were consistent with the general verdict. An assumption was indulged in favor of the general verdict, and in one or more of the opinions reference is made to Indiana's contributory negligence statute. True it is, as contended by appellants, that the court in determining these cases announced that a driver having stopped or looked and listened (as conclusively determined by the special interrogatory method under the Indiana practice) and having reasonably concluded that there was ample time to make the crossing without any intent to "beat" the train could then proceed without any imputation of negligence on his part and assume that the engineer would not exceed the legal speed limit. The Texas case cited by appellants is likewise not in point. It arose over a daylight auto-train collision. There was a special finding by the jury to the effect that the deceased had exercised due care before going on the tracks

and had ample time to pass in front of the train which was then some considerable distance away from the crossing. But the car became stalled on the tracks "Then, after we find Harrington stranded on the track, what does the testimony show? The fireman said he realized [the] danger when 200 feet away  *  *  *. He called to the engineer at once, but, running rapidly as they were, they could not stop.  *  *  *  the engineer admitted that if he had been running only 6 miles per hour [the legal rate] he could have stopped the train in [time]." [235 S. W. 192.] Nor does the Arkansas case cited supra, help appellants' cause. There, in affirming a judgment for plaintiff, reference is made to the testimony of an eye witness to the effect that the car in question was brought to a complete stop at the bottom of the incline leading to the tracks. As the car proceeded up the incline he saw the driver turn his head and look to the south (from which direction the train was coming) and then when the vehicle reached the rails it was struck by the speeding train. Under such circumstances it was held, as contended for by appellants, that "it cannot be said as a matter of law that these travelers were guilty of contributory negligence in attempting to make the crossing ahead of the train, even if they looked and saw the train approaching.  *  *  * Now, it does not always constitute negligence for a traveler to attempt to make a crossing ahead of an approaching train. That depends upon the circumstances—the speed of the train and the distances of the traveler and the train, respectively, from the crossing. The test is whether the effort to cross the track with the train approaching is an act which a reasonably prudent person in the exercise of ordinary care would not attempt." [155 Ark. 560, 245 S. W. 327.] There can be no quarrel with that statement of the law. The only qualification that need be made is that, in this jurisdiction the courts have defined with greater detail just what ordinary care constitutes. Certainly, in large cities where railroads more or less occupy the public streets the law should be construed so as to permit a traveler, after stopping or

looking and listening near the tracks, to conclude that a train approaching several blocks away will not be moving a mile or two a minute, and to proceed across the tracks without being guilty of negligence. On the other hand, where evidence may appear indicating that a driver after stopping or looking and listening had determined to "beat" the train to the crossing he is not to be held blameless for his final rash act because he, in part complied with his legal duty.

In the case at bar only one inference can be drawn as to the conduct of the deceased as he approached the railroad tracks and that is, he could not, from the undisputed facts appearing in the record, have used that degree of ordinary care required of him for his own safety. Before a motorist can be justified in making any assumption that signals will be given or that the train will be operated at a lawful speed he must first slow up, listen for signals, and look attentively up and down the track.

"If * * * by looking, [he] could have seen an approaching train in time to escape, it will be presumed, * * * either that he did not look, or, if he did look, that he did not heed what he saw." *Wilkinson* v. *Oregon Short Line R. R. Co.*, 35 Utah 110, 99 P. 466, 468; *Bates* v. *San Pedro, L. A. & S. L. R. R.*, 38 Utah 568, 114 P. 527; *Lawrence* v. *Denver & R. G. R. R. Co.*, 52 Utah 414, 174 P. 817; *Shortino* v. *Salt Lake & U. R. R.*, 52 Utah 476, 174 P. 860; *Dalley* v. *Mid-Western Dairy Products Co.*, 80 Utah 331, 15 P. 2d 309.

Being charged with notice of the existence of the approaching train the deceased had no right to make any assumption as to its speed because weather conditions were such that he could not form or exercise any judgment as to how far away the coming engine was. Under such circumstances the question of contributory negligence becomes one of law for the court and the ruling of the trial judge in this regard must be upheld.

Appellants next contend that there appears "sufficient evidence in the record to show that the proximate cause of the accident was the negligence of the respondent." On the

facts before us it does appear that appellants had produced evidence tending to show that no signal was given by the approaching engine, and that the train was then and there exceeding the speed limit fixed by city ordinance. Had these questions been the only ones presented to the court, certainly appellants would have been entitled to go to a jury. But such facts as the deceased's familiarity with the intersection in question; the fact that had he looked he could have seen the headlight on the approaching train in time to have stopped, together with the fact that the train could not have been moving very fast because it had to be brought to a complete stop one block south before crossing over the Union Pacific tracks, all point toward the inescapable conclusion that while the unlawful speed of the train and the failure to sound any warning was a proximate cause of the accident, yet that the deceased's failure to exercise reasonable and ordinary care as he drove onto the tracks was without any question also a proximate contributing cause of the accident.

It is next maintained that in considering the actions of the deceased, a presumption should be indulged that the deceased as he approached the intersection in question was ordinarily careful in protecting himself against injury. This contention is answered so far as this jurisdiction is concerned by referring the reader to the quotation from *Wilkinson* v. *Oregon Short Line R. R. Co.*, supra.

Finally, it is contended that the rule of contributory negligence is harsh and should now be restricted and not be permitted to be interposed at all in negligence actions by way of defense to any charged violation of express statutory enactment. The answer to this contention lies in the fact that during the many years the present rule has been enforced in this jurisdiction no serious effort has been made to modify same in the legislature.

In this case after giving appellants the benefit of the most favorable construction of the testimony of their own witnesses the conclusion must be reached that the deceased could

have seen the train in ample time to have stopped had he looked and if he did look upon seeing the near approaching light it became his duty to bring his automobile to a stop. His failure to look or to act upon what he saw if he did look bars a recovery here as a matter of law. See Vol. 10, Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition. § 6634, page 395, and the cases therein cited.

The judgment of the District Court is affirmed. Costs to respondents.

MOFFAT, C. J., and LARSON and PRATT, JJ., concur.

WOLFE, Justice (concurring in result).

I concur in the result. I interpret the opinion to hold that where one knows, or should know if he looks, that a train is approaching through such poor visibility as to make any judgment of its speed or distance so unreliable that he is not able to determine whether, going at a legal speed, it would strike him, he should not attempt to cross in front of it. Under these circumstances he does not come within the class of cases which hold that a person may not necessarily, in law, be adjudged to be imprudent if he attempts to cross when he can observe and know that the train is such a distance away that, coming at legal speed, it could not collide with his car.

McDONOUGH, J., being disqualified, did not participate herein.