286 P.2d 790

Harley BENSON, Plaintiff and Respondent,

v.

The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, and G. L. King, Defendants and Appellants.

No. 8321.

Supreme Court of Utah.

Aug. 12, 1955.

Van Cott, Bagley, Cornwall & McCarthy, Leonard J. Lewis, Grant Macfarlane, Jr., Salt Lake City, for appellants.

Mark S. Miner, Salt Lake City, for respondent.

WORTHEN, Justice.

This action was brought to recover for injuries sustained by plaintiff in a train-automobile collision which occurred in November 1948. The case was tried to a jury and a verdict returned in the sum of $19,000—$17,000 general damages and $2,-000 special damages. Defendants moved for a new trial and it was denied upon condition that plaintiff remit the $2,000 special damages, which plaintiff did. Defendants appeal from the judgment and the order denying a new trial.

Defendants insist that the undisputed evidence compels the conclusion that plaintiff was negligent as a matter of law and such negligence was a contributing cause of the accident. Defendants contend that the court committed prejudicial error in the admission of certain evidence and in denying defendants' motion for a new trial on the ground of newly discovered evidence. The corporate defendant will be referred to as railroad.

The accident occurred at a crossing which is located at Second South and Sixth West Streets in Salt Lake City, Utah. Second South Street runs in an east-west direction and at this location is fully paved, is about 100 feet wide, has 4 traffic lanes, 2 for eastbound and 2 for westbound traffic, and has parking areas on both sides.

Second South Street is traversed by 3 sets of railroad tracks near the intersection of Sixth West, which cross Second South Street from a northwesterly to a southeasterly direction at an angle which is nearly a right angle at this point. Two sets of tracks are mainline tracks of the railroad, the other is a subsidiary track that runs to the roundhouse. The subsidiary tracks

are the westernmost of the 3 sets. The middle tracks are used for southbound traffic. The eastermost tracks are used for northbound traffic. There is a distance of about 12 feet between the mainline tracks and the subsidiary tracks are about 40 to 50 feet west of the northbound tracks. The tracks at this crossing are substantially level with the street.

On the night in question, the undisputed facts show that plaintiff was traveling west on Second South Street at a speed of between 15 and 20 miles per hour. Plaintiff so testified. Defendants' train-locomotive, with 48 loaded cars attached, was traveling south on the southbound or middle tracks at a speed of 5 to 6 miles per hour. It was snowing at the time and the tracks were covered with slush which was about the same color as the road, obscuring the view of the tracks themselves. Plaintiff testified that his visibility was between 25 and 30 feet at the crossing where the accident occurred, both out the windshield on the driver's side of his automobile and out the windshield on the passenger's side of his automobile. Plaintiff further testified that he could see only 5 to 6 feet on either side of the car out of the side windows, and the beam of his lights extended to the right and left of the car a maximum of 4 to 5 feet. Plaintiff's witness, Eichelberger, testified to the same effect. The evidence was in conflict as to the visibility restrictions of the evening, but the plaintiff and plaintiff's witnesses testified that it was one of the worst snowstorms they had seen in this area, with snow coming down in gusts which would at times make visibility very poor. Plaintiff testified that his headlights did not pick up the railroad cross-arm warning signals, that he was unfamiliar with the crossing, never having driven across it in a car, and that he did not know that he was at a railroad crossing. Upon cross-examination plaintiff admitted that he had formerly worked for the Western Pacific Railroad Co. and had been employed by that railroad company in the capacity of fireman; and in performance of his duties had been across this particular crossing by train many times and knew that the railroad tracks crossed Second South in this vicinity although he thought the tracks in question were 2 or 3 blocks farther west. A statement taken from plaintiff by one of the railroad investigators within one month after the accident and 6 years before the trial was introduced in evidence wherein plaintiff admitted that he drove daily over this intersection both during daylight hours and during night hours. Plaintiff admitted having signed the statement but stated that he didn't remember having made the statement about driving over this intersection. Plaintiff testified further that he never saw the locomotive until the impact.

There were 4 witnesses to the collision who were all in a car that was traveling east on the south side of Second South which had stopped west of the crossing to allow the train to pass. Three of these witnesses were called by plaintiff and testified. Mr.

Tucker, who was riding in the front seat of the automobile, saw the light of the locomotive when the car in which he was riding crossed the roundhouse subsidiary tracks and when the locomotive was at a point 6 to 12 feet north of the intersection. Upon seeing the light of the train, he told Mr. Eichelberger, who was driving the eastbound auto, to stop, and immediately he noticed the train and plaintiff's automobile about to become involved in a collision. Tucker testified that visibility was better with the wind than against it and that the wind was blowing from the west or northwest. He testified that the point of impact occurred on the side of the engine opposite the side that he was on and that the front of plaintiff's car came into contact with the east side of the locomotive.

The defendants admit that there was evidence whereby the jury could find defendants guilty of negligence, and that issue is not before the court on this appeal. The chief ground of this appeal, and the one to be decided by this court is: "Was plaintiff guilty of contributory negligence as a matter of law?" Other questions are raised by defendants in their brief, but we need not decide them if defendants are correct on this point.

In determining this question, the jury found the issues in favor of the plaintiff, and he is entitled to have us consider the evidence, and every inference arising therefrom in the light most favorable to him. See Toomer's Estate v. Union P. R. R. Co., Utah, 239 P.2d 163; Lewis v. Rio Grande Western Ry. Co., 40 Utah 483, 123 P. 97; Cromeenes v. San Pedro, L. A. & S. L. R. Co., 37 Utah 475, 109 P. 10.

The rule to be applied in deciding whether or not plaintiff is to be held contributorily negligent as a matter of law is the rule followed in the Toomer case, supra, that is: If all reasonable minds would arrive at the same conclusion; that is, that Benson failed to use the degree of care which an ordinary, reasonable and prudent person would have observed for his own safety under the circumstances, then the defendants' contention is correct.

The law is quite explicit as to the degree of care required of a traveler at a railroad crossing. In the case of Wilkinson v. Oregon Short Line R. Co., 35 Utah 110, 99 P. 466, 468, Mr. Justice Frick, quoting with approval Justice Coffey in Mann v. Belt Ry. Stockyard Co., 128 Ind. 138, 142, 26 N.E. 819, 820, laid down the following rule:

" 'The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term "ordinary care under the circumstances" shall mean in these cases. In the progress of the law in this behalf the question of care at railway crossings, as affecting the traveler, is no longer, as a rule, a question for the jury. The quantum of care is exactly prescribed as matter of law. In attempting to cross the traveler must listen for signals, notice signs put up as

warnings, and look attentively up and down the track. * * * If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligent per se.' "

In the absence of any special hazards or conditions of danger, the well-established rule in respect to the duty of travelers approaching railroad crossings in this state is that the traveler is required to look and listen, and if necessary to stop to avoid being injured by approaching trains, and if he fails to do so, resulting in his injury, he cannot recover because of his contributory negligence. Toomer's Estate v. Union P. R. Co., supra; Pippy v. Oregon S. L. Ry. Co., 79 Utah 439, 11 P.2d 305; Nuttall v. Denver & R. G. W. Co., 98 Utah 383, 99 P.2d 15; Wilkinson v. Oregon S. L. R. Co., supra.

Plaintiff contends that this case is taken out of the general rule because of the restrictions to visibility creating a special hazard so that plaintiff could not and did not know he was at a railroad crossing and could not and did not see the engine with which the collision occurred. To substantiate this claim, he cites Toomer's Estate v. Union P. R. R. Co., supra, in which Toomer was killed when he crossed a railroad track in the path of a streamliner. In that case the plaintiff's vision was obscured by a freight train on the adjoining track which was moving slowly, and it was reasonable to assume that this slow-moving freight had activated the train signal. The streamliner was speeding on the inside tract at 50–60 miles per hour in violation of a city ordinance calling for a 30 mile per hour speed at that crossing. The court in that case held that the railroad itself was responsible for creating the special hazard which existed at the crossing, and that therefore the question of whether Toomer had acted as a reasonably prudent man would act under the circumstances was properly a question for the jury.

In the case of Pippy v. Oregon Short Line R. Co., supra, also relied upon by plaintiff, the special hazard affecting visibility was again a string of box cars left on a side track by the Railroad Co., and the train was traveling at 60 miles per hour. Plaintiff in that case had looked and was not able to see anything because of the box cars. The court held under those facts, two justices dissenting, that the question of contributory negligence was for the jury.

In both these cases the confusing situation creating a hazard was caused by the Railroad Co. rather than by outside agents. Plaintiff has not cited any cases in which the court has held contributory negligence to be outside the general rule when the hazard affecting visibility was not caused or at least partially caused by the Railroad Co. itself.

Even if the Railroad Co. is the cause of the hazard, the traveler is not absolved from the degree of care required of ordinary,

reasonable, and prudent men. The court in the Pippy case, supra, at page 451 of 79 Utah, at page 310 of 11 P.2d said:

"The conflict, however, does not go to the proposition that under complicated conditions the traveler is relieved from looking and listening for the approach of trains, or from exercising due care and vigilance to avoid injury. That is his duty at all times and on all occasions in approaching a railroad crossing and in driving over it, whether the view is obstructed or unobstructed, *and the greater the hazard or danger surrounding him, the greater is the care required of him.*" (Emphasis added.)

In the case at bar the hazard affecting visibility was the snowstorm with the wind blowing toward plaintiff. Plaintiff testified repeatedly that he saw nothing at the crossing at which the accident occurred other than the dark slushy road ahead. He saw no tracks, no cross-arm warning signal, no street light at the crossing, no headlight on the locomotive, nor did he see the engine itself. He did not see the lights of the Eichelberger car although the occupants of that car, his witnesses, were able to see plaintiff's headlights and the light of the train.

The facts in the case of Nuttall v. Denver & R. G. W. R. R. Co., 98 Utah 383, 99 P.2d 15, 18, are very similar to the case at bar. In that case the atmosphere was misty and foggy, obscuring the vision, which made it impossible to judge how fast defendants' train was moving. It appeared that defendants' train was in fact speeding and when Nuttall attempted to cross the track ahead of it, he was struck.

This court held Nuttall contributorily negligent as a matter of law and quoted with approval the rule from the Wilkinson case, supra:

" 'If * * * by looking (he) could have seen an approaching train in time to escape, it will be presumed, * * * either that he did not look, or, if he did look, that he did not heed what he saw.' "

Plaintiff's witness, Tucker, said that he could see the approaching train from a point that was at least 62 feet away (from the locomotive).

Plaintiff testified that if he had seen the train when within 20 feet of it he could have stopped. Since plaintiff was traveling from 2½ to 4 times as fast as the train and since the train was struck by plaintiff at a point far enough from the front end of the train that plaintiff's witness Tucker could not see the impact because it was on the other side of the train from him, it necessarily follows that the front end of the train was directly in front of plaintiff when plaintiff was only 20 feet from the point of impact. Since plaintiff testified that if he had seen the train when within 20 feet of it he could have stopped it compels the conclusion that he either did not look or if he looked he did not heed what he saw as was said by this court in the Nuttall case, supra:

" * * * he could not, from the undisputed facts appearing in the record,

have used that degree of ordinary care required of him for his own safety. * * *"

Plaintiff's own testimony compels the conclusion that if he had looked he could have seen the train in time to escape, and he must be held contributorily negligent as a matter of law barring recovery.

As heretofore observed plaintiff contends that he did not know that he was approaching a railroad crossing and therefore the same degree of care demanded of one familiar with such a crossing was not required of plaintiff. Let us examine this contention.

The record discloses that plaintiff was not a stranger to this locality. He lived at Garfield and worked at 180 South First West, Salt Lake City, and traveled daily by car from his home to his place of employment. He testified to having slowed down at the intersection of Second South and Fifth West. He knew that after traveling the length of a Salt Lake City block (660 feet) he would reach another intersection.

We believe that all reasonable men would agree that if plaintiff had looked he could have seen the approaching train in time to stop and avoid the collision, *unless he was traveling too fast under the existing conditions to do so.*

If the testimony of plaintiff most favorable to him be accepted still plaintiff must be held contributorily negligent as a matter of law. He testified that he was traveling "between fifteen and twenty miles an hour. Not over twenty." He likewise testified that his visibility was "from twenty-five to thirty feet."

This court is committed to the rule announced in Dalley v. Mid-Western Dairy Products Co,[1] as follows:

"In this jurisdiction the doctrine is established 'that it is negligence as a matter of law for a person to drive an automobile upon a traveled public highway, used by vehicles and pedestrians, at such a rate of speed that said automobile cannot be stopped within the distance at which the opertator of said car is able to see objects upon the highway in front of him.'"

By his own testimony plaintiff was traveling not less than 15 miles per hour and his visibility was not greater than 30 feet. In the ordinary reaction time of ¾ second (the time between recognition of danger and application of brakes) plaintiff would travel 16½ feet before brakes were applied, and would have required at least an additional 13 feet to have stopped on good dry pavement and not less than 18 feet on wet roads after brakes were applied. Thus at the minimum speed estimated, it was impossible for plaintiff to have stopped his automobile short of 34.5 feet and well above the distance of visibility. That was negligent as a matter of law.

We have pointed out that taking the evidence in its most favorable light, still plain-

1. 80 Utah 331, 15 P.2d 309, 310.

tiff was negligent as a matter of law in driving his automobile at such rate of speed that he was unable to stop within the range of visibility.

But plaintiff testified that he was traveling at a speed of between 15 and 20 miles an hour. How then stands the evidence (when we apply the rule that we must consider the same in the light most favorable to plaintiff)? We hold that the plaintiff's speed for the purpose of this decision is fixed at 20 miles per hour and his visibility at 25 feet. Plaintiff only testified to his speed and no other witness testified to visibility from plaintiff's position—looking west.

In the case of Wheeler v. Fidelity & Deposit Co. of Maryland[2] the court said:

"While it is a general rule that, in considering a motion for a directed verdict, the evidence produced by the party against whom the verdict has been directed should be considered in its most favorable light, yet, after all, there must be substantial evidence in support of an issue in order to entitle a litigant to have the issue submitted to a jury. And, even where the evidence is conflicting, if it is of so conclusive a character that the court, in the exercise of sound judicial discretion, would set aside a verdict in opposition to it, then it is the duty of the court to direct a verdict. (Citing cases.)

"Where as in this case a party testifies in his own behalf, he is not entitled to go to the jury on an issue *unless that portion of his own testimony which is least favorable to his contention is* of such a character as will sustain a verdict in his favor on that issue. (Citing cases.)" (Emphasis added.)

In Alvarado v. Tucker[3] an action was brought against defendant and the trial court at the conclusion of plaintiff's evidence dismissed the action. On appeal it was contended that the evidence would reasonably support a finding that defendant was speeding. The zoned speed was 25 miles per hour. An experienced police officer called by plaintiff testified that the speed of defendant's car was anywhere from 25 to 30 miles per hour. We held that from such testimony a jury could not find from a preponderance of the evidence that defendant was traveling in excess of 25 miles per hour.

In the case of Fowler v. Pleasant Valley Coal Co.[4] this court reversed a judgment for plaintiff and directed that the court grant a judgment of nonsuit against plaintiff. Speaking for the court Mr. Justice Miner after observing contradictions and inconsistencies in the testimony of plaintiff and his witness said:

"If there be a contradiction, it arises from the plaintiff's own testimony. In such a case, where a nonsuit is asked, the trial court may consider such testi-

2. 8 Cir., 63 F.2d 562, 564.
3. 2 Utah 2d 16, 268 P.2d 986.
4. 16 Utah 348, 52 P. 594, 596.

mony true as bears the most strongly against the interest of the plaintiff."

So in the instant case, from plaintiff's own testimony the jury could not find that plaintiff was traveling only 15 miles per hour, in fact from the preponderance of the evidence the jury could find that plaintiff was traveling 20 miles per hour. (Likewise the jury could not have found, from the preponderance of the evidence that his visibility was 30 feet or any distance in excess of 25 feet.)

At a speed of 20 miles per hour in the ordinary reaction time of ¾ second (the time between recognition of danger and application of brakes) plaintiff would have traveled 22 feet before brakes could be applied, and would have required at least an additional 21 feet to have stopped with good brakes on good pavement.[5] Thus it is clear that plaintiff was negligent as a matter of law in traveling at a speed of 20 miles per hour with visibility of only 25 feet when with good brakes and on good pavement he would have been unable to stop in less than 43 feet and he could not stop short of 52 feet on wet slushy roads. Certainly he was negligent as a matter of law in traveling at a speed of 20 miles per hour with visibility that made it unsafe to travel in excess of 10 miles per hour. Plaintiff testified that he didn't see the engine until the point of impact; that he didn't apply his brakes; in fact he testified there was no time to apply his brakes after he saw the train. Either plaintiff didn't look or if he did look he didn't heed what he saw *unless he saw nothing*. Traveling at 20 miles per hour with eyes open and senses alert plaintiff would be within 3 feet of the train within the ordinary reaction time of ¾ second before he could touch his brakes.

By the standard laid down in the Dalley case plaintiff was contributorily negligent at a matter of law. He was traveling approximately twice as fast as was prudent and at a speed that made it impossible for him to stop within the distance he could see an object ahead.

Our attention has not been called to any case of a collision between an automobile and a train where the automobile was traveling 2½ to 4 times as fast as the train. Certainly in this case the operator of the train could have done nothing to avoid the accident. Since plaintiff struck the engine a considerable distance back from the front end it follows that the train was entering plaintiff's lane of traffic when plaintiff was not less than 40 feet away. If he had been able to bring the train to a stop where it was when hit by plaintiff, nevertheless plaintiff would have had only 3 feet in which to stop his automobile after applying his brakes—if he had tried to stop his car.

We are of the opinion that plaintiff was contributorily negligent as a matter of law and that his negligence proximately contributed to the collision.

5. Data published by the Utah Highway Patrol; Walker v. Peterson, 3 Utah 2d 54, 278 P.2d 291; Bates v. Burns, 3 Utah 2d 180, 281 P.2d 209.

In view of our conclusions on the question of plaintiff's contributory negligence it is unnecessary to consider the other errors assigned.

The judgment is reversed and the case is remanded to the trial court, with directions to set aside the judgment and to enter judgment for defendant no cause of action, costs to defendants.

HENRIOD, J., concurs.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur in the result.