**L. E. BROADHURST, Appellant,**

v.

**Chester L. WHITELOCK and Vitro Minerals Corporation, a corporation,**
**Appellees.**

**No. 7005.**

United States Court of Appeals
Tenth Circuit.

Dec. 22, 1962.

Harley W. Gustin, Salt Lake City, Utah (Wm. J. Cayias and Gustin, Richards & Mattsson, Salt Lake City, Utah, were with him on the brief), for appellant.

Clair M. Senior, Salt Lake City, Utah (Senior & Senior and Francis M. Gibbons, Salt Lake City, Utah, were with him on the brief), for appellees.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

SETH, Circuit Judge.

This is a suit brought by an individual claimant and his corporate lessee to quiet title to a group of eighty-eight unpatented mining claims in Utah. The defendant claims an interest in the property under two agreements between himself and the individual plaintiff. The trial court found the issues for the plaintiffs, and defendant appeals.

The individual plaintiff-appellee Whitelock located all but six of the claims in question and these locations were financed by one Evan Roberts, who is not a party. The locations were made in February, March and May 1958. Whitelock and the appellant Broadhurst entered into an "Assignment Agreement" dated December 13, 1957, which referred to certain named claims not here involved sold by Whitelock to Broadhurst, and which recited the considera-

tion for the sale and set the royalty. This agreement was not recorded, and being dated in December 1957 could not refer by name to the claims located by Whitelock which are involved in this suit. The agreement does however contain a paragraph with prospective language which has become an issue in this suit. This paragraph states:

"9. It is understood and agreed that the said Whitelock has staked other claims and will continue to acquire additional properties and leases in his name and for the benefit of the said Broadhurst, and the said Whitelock agrees to make appropriate assignments and transfers of these interests as acquired over and to the said Broadhurst; and in connection with all such property involving claims where halloysite is the principal ore mined from the said claims, the royalty provisions hereinabove set forth shall apply as to all such properties conveyed and delivered to the said Broadhurst."

The appellant asserts that he has an interest in the claims in question by reason of Whitelock's undertaking as to future acquisitions contained in this paragraph.

On April 10, 1958, the same two parties entered into a second agreement which was prepared at the request and expense of Evan Roberts by his attorney, David M. Zerner. This agreement was recorded and refers to certain named mining claims but does *not* refer by name to any of the claims involved in this action. When this agreement was submitted to Whitelock, he made certain interlineations and deletions. This was done in the office of appellant's attorney, William J. Cayias, by Whitelock without the advice of an attorney of his own. Paragraph 6 of this agreement of April 10, 1958, reads as follows, including the interlineations:

"It is understood and agreed that the said Whitelock has staked other/ *Halloysite CLW B.D.W.* claims and will continue to acquire additional/ *Halloysite CLW B.D.W.* properties

and leases in his name for the benefit of the said Broadhurst, and the said Whitelock agrees to make appropriate assignments, conveyances, and transfers of these interests as acquired over and to the said Broadhurst. Any such *Halloysite CLW B.D.W.*/properties assigned, conveyed, and transferred by Whitelock to Broadhurst and which properties are accepted by Broadhurst in the future shall be subject to the terms and conditions of this agreement without any further writing or agreement between the parties; and Whitelock shall thereafter be entitled to receive the royalty described herein in accordance with the terms of this agreement with respect to such additional properties conveyed and assigned to Broadhurst."

The recitals in this same agreement as changed by Whitelock read in part as follows:

"WHEREAS, * * * an assignment agreement was executed between the parties on the 13th day of December, 1957, * * *, and

"WHEREAS, other assignment agreements may have been executed in the past by the parties with respect to the assignment of properties from Whitelock to Broadhurst, and

"WHEREAS, it is the desire of the parties hereto to confirm and ratify prior assignments, sales and transfers of properties, leases, claims and options from Whitelock to Broadhurst; to nullify all prior assignment agreements executed by the parties/*as to Halloysite properties CLW B.D.W.* and to set forth in writing a controlling agreement between the parties with respect to properties previously assigned and conveyed from Whitelock to Broadhurst/*covering Halloysite properties in Juab County, Utah and Lincoln County Nevada CLW B.D.W.* as well as with respect to other claims and leases in additional properties now held by Whitelock or to be acquired by Whitelock in the future. *CLW B.D. W."*

The agreement of April 10, 1958, as so altered by Whitelock was duly signed by him and was subsequently acknowledged by Broadhurst before Zerner.

The connection of Roberts and Zerner with this suit requires some explanation. Roberts and appellant had various joint ventures on mining properties and Zerner, who was Roberts' attorney, also represented appellant in situations where Roberts was interested. Zerner testified that Roberts had an interest in the property, the subject of this suit, through such a joint venture agreement with appellant. Zerner also assisted in preparing appellant's pleadings in this case. In the two agreements above referred to, provision is made that any notices to be sent to appellant shall be sent in care of Zerner.

In July 1958 Whitelock assigned the claims in question (and others) to Blue River Fluorspar Mining Company, reserving to himself a royalty. This company was wholly owned by Evan Roberts, and attorney Zerner was an officer and handled its legal matters. Some exploratory and development work was done on the properties so assigned, but the assessment work was done on only a few of the claims. In July 1959 Blue River assigned back the claims in question (and others) to Whitelock, who then did the assessment work, and on April 1, 1960, he leased the claims in question to appellee, Vitro Minerals Corporation. Appellant Broadhurst made no demand on Whitelock to convey the claims to him prior to this suit. The parties concede that the claims in issue are *not* halloysite claims.

The principal issue on appeal concerns the construction of the agreements of December 13, 1957, and April 10, 1958. The other issues are whether or not appellee Vitro had constructive notice of the contents of the agreements, and whether appellant is estopped from asserting his claim by his actions and those of his associates. The case is basically

one involving the substantial evidence rule.

The trial court found as a fact that the agreement of April 10, 1958, as executed, was intended to supplant and to nullify the agreement of December 13, 1957. The court also noted that neither of the agreements makes reference by name to any of the claims in question. The court concluded that the April 10, 1958, agreement does not "cover or apply" to the claims in issue. The court considered the acts of the parties and their associates with reference to the claims and found that such actions were inconsistent with the position taken by the appellant at the trial. The record shows that the claims with but one exception (one not located by Whitelock) were located after the date of the agreement of December 13, 1957. The prospective provisions of paragraph 9 of this agreement appear near its end and follow a detailed treatment of the claims which are specifically named with provision for assignment thereof, consideration for these assignments, and for royalty. This provision in paragraph 9 states in part that Whitelock "will continue to acquire additional properties," but contains no limitation by way of time or place and contains no provision for any consideration or compensation for such work or royalty on any properties other than those containing halloysite.

Appellant concedes in his brief that the April 10, 1958, agreement as prepared by the attorney of the Roberts-appellant co-adventure, and as originally submitted to Whitelock, was intended to nullify the December 13, 1957, agreement. Appellant argues however that Whitelock, by his interlineations and deletions, limited the scope of this nullification to halloysite properties only, and thereby continued the commitment to assign to appellant all other claims including those in issue. It appears that in making these changes, Whitelock was attempting in a somewhat clumsy manner to limit *any* obligations due appellant to halloysite claims, and it is reasonable to assume that any alteration made by him would be in the direction of a limitation of his undertakings. These changes also limited the area concerned, which was not done in the prior agreement, and this again is consistent with an overall intent to be more restrictive than in the first agreement. The April 10th agreement as first written provided for royalties to Whitelock on all types of claims, but his alterations limited his royalty to halloysite. We agree that Whitelock's intent was clear as to the scope of the agreement and that it supplanted all others although the changes were somewhat awkwardly done. Appellant accepted these changes, and it is conceded that his intention originally was also to nullify the first agreement.

The appellant argues that some of the interlineations in the agreement of April 10, 1958, should be regarded as testimony of a party "adverse to his position." He cites in support of this proposition three Utah cases. The first case cited is Fowler v. Pleasant Valley Coal Co., 16 Utah 348, 52 Pac. 594, in which the court held essentially that if the testimony of plaintiff contained contradictions, the court should take as correct that which bears most strongly against his interest. In Benson v. Denver & R. G. W. R. R., 4 Utah 2d 38, 286 P.2d 790, the court considered the testimony of a plaintiff as to the speed his car was traveling, and held him bound by the higher end of the range of speed to which he testified. In DeVas v. Noble, 13 Utah 2d 133, 369 P.2d 290, the Utah court considered the two cases cited and found an exception based upon the capacity or capabilities of the plaintiff in giving her testimony. We do not feel that these cited cases are applicable to the present situation, and there is cited no authority to carry over such a rule to changes made in the wording of a contract. This contract was drafted by one of the parties and changed by the other; the trial court sought out the intent from the particular wording, from the whole document, from the gen-

**134**

eral circumstances, and from the acts of the parties.

 The court concluded that following the execution of the April 10th agreement, the conduct of the parties was consistent with Whitelock's position as to its limited meaning. As indicated above, the evidence shows that following the two agreements, Whitelock made an assignment of the claims to the Blue River Fluorspar Mining Company of Evan Roberts, the co-adventurer of appellant. In this assignment Whitelock retained a royalty which would not have been permitted had the claims been under the agreements considered above. The record also shows the participation by attorney Zerner in this corporation and in the handling of the claims in question when held and conveyed by it. The assignment of these claims back to Whitelock on July 29, 1959, was apparently prepared by Zerner and was accompanied by a letter from him stating that Whitelock might wish to keep these claims or abandon them, and thus treating them as Whitelock's alone. It was also accompanied by a surrender of mining lease covering other claims specifically mentioned in the two agreements which was executed by Zerner as attorney in fact for the appellant. The trial court noticed the co-adventure between Roberts and Broadhurst, and also the fact that Zerner acted as attorney for Broadhurst only in matters in which Roberts had an interest. The court found that appellant Broadhurst knew what was going on during 1958 and 1959 as to such mining claims. This refers to the work done on the claims by Roberts' corporation, Blue River, and by the absence of any recognition by Blue River or by Zerner of any ownership in the claims other than that of Whitelock, Thus the action of the parties and their associates in the handling of the claims served to place an interpretation on the agreements by the parties, and this interpretation is consistent with the trial court's findings and conclusions.

It must be concluded that the trial court's finding that the April 10, 1958, agreement supplanted the prior agreement as to these claims is well supported by the evidence; and the same conclusion is reached as to the trial court's finding that the April 10, 1958, agreement does not apply to the claims in issue. In view of this result, it is not necessary to consider the other issues raised by the parties.

Affirmed.