516 P.2d 1182

Garr J. LUNDQUIST, Plaintiff
and Appellant,

v.

KENNECOTT COPPER CO., INC., a Utah
corporation, and F. H. McCouley,
Defendants and Respondents.

No. 13271.

Supreme Court of Utah.

Dec. 3, 1973.

Michael D. Esplin of Esplin & Halliday, Salt Lake City, for plaintiff and appellant.

Richard H. Moffat, Salt Lake City, for respondents.

CALLISTER, Chief Justice:

Plaintiff, motorist, initiated this action to recover damages for the personal injuries he sustained in a collision with a train operated by the defendants. Defendants, on the basis of the pleadings and depositions, moved for summary judgment, which the trial court granted. Plaintiff appeals therefrom, urging that the trial court erred in finding him contributorily negligent as a matter of law.

Plaintiff, who resided in Murray, Utah, was returning to his home from Tooele on April 1, 1970, at approximately 7 o'clock in the evening. Due to plaintiff's unfamiliarity with the area, he missed the Bacchus turnoff and continued in a southerly direction to approximately 6200 South. In this area he observed a dirt road which appeared to go in an easterly direction towards Kearns, and he turned and proceeded thereon. After traveling down this road for a distance in excess of a mile, he observed a cross buck marking a railroad crossing approximately 70 or 80 feet ahead. Plaintiff's view of the tracks in a northerly direction was obstructed by an embankment which was approximately 300 yards in length, 30 feet wide, and 15 to 20 feet high. Plaintiff estimated his speed at approximately 10 to 15 miles per hour. He testified that as he proceeded to the crossing he looked to the north and observed nothing since the embankment extended to

**264**

a distance approximately 10 feet north of the crossing. He looked in a southerly direction, where his view was unobstructed, and he saw nothing. As he looked to the north again, the train and vehicle collided. Plaintiff conceded that there was sufficient space prior to crossing the tracks where a vehicle could stop, and the driver would have an unobstructed view in a northerly direction to determine if a train were approaching.

To support their motion for summary judgment, defendants submitted a memorandum wherein they cited Sec. 41–6–95, U.C.A.1953. They successfully urged that this statute was mandatory in its requirement that all motorists in approaching a railroad crossing must stop prior to crossing the track. Plaintiff concededly had not stopped prior to proceeding onto the tracks and was therefore contributorily negligent as a matter of law. Defendants further cited relevant case law analyzing a driver's duty in approaching a railroad crossing in terms of common law principles, and compared plaintiff's actions thereto. Specifically, defendants contended that plaintiff did not fulfill his duty of due care when he failed to look for a train at a point where his view was unobstructed prior to his crossing the tracks.

In a memorandum decision, the trial court ruled that Sec. 41–6–95, U.C.A.1953, was mandatory and that a motorist, upon approaching a railroad crossing, was obligated to stop and not to proceed until he could do so under certain named conditions. The opinion stated that plaintiff did not stop his vehicle, that each party was proceeding at a relatively slow speed, and that at the time plaintiff entered upon the railroad track, he was immediately struck by the train. The court was of the further opinion that the train was plainly visible to the plaintiff at the time he entered the crossing and was in a hazardous proximity to the crossing at that time, Sec. 41–6–95(a)(4), U.C.A.1953. The trial court ruled that plaintiff was contributorily negligent as a matter of law on the grounds: (1) In failing to stop; (2) In not determining that an approaching train was in hazardous proximity to the crossing.

On appeal, plaintiff contends that the trial court improperly interpreted Sec. 41–6–95, U.C.A.1953, as compelling *all* motorists to stop upon approaching a railroad crossing.

Section 41–6–95, U.C.A.1953 provides:

(a) *Whenever* any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty feet but not less than ten feet from the nearest track of such railroad and shall not proceed until he can do so safely *when*:

(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

(2) A crossing gate is lowered, or when a human flagman gives or continues to give a signal of the approach or passage of a train.

(3) A railroad train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and such train by reason of its speed or nearness to such crossing is an immediate hazard.

(4) An approaching train is plainly visible and is in hazardous proximity to such crossing. [Emphasis added.]

■ The term "whenever" means at any and all times.[1] The statute establishes a standard that at any and all times that a motorist approaches a railroad crossing, he shall stop and not proceed until he can do so safely *when* (on the conditions that)[2] one of the four enumerated circumstances are subsisting. Each of the four specified conditions are qualified by the word "when" and thus each becomes an adverbial clause explaining the circumstances under which the motorist is mandated to "stop." This interpretation is consistent with Sec. 41–6–96, U.C.A.1953, which completes a statutory scheme declaring the circumstances under which a motorist is commanded to stop at railroad crossings. This latter statute authorizes state or local authorities to designate as particularly dangerous a grade crossing of a railroad and to erect a stop sign thereat. The statute then provides: " . . . When such stop signs are erected, the driver of any vehicle shall stop within fifty feet, but not less than ten feet from the nearest track of such grade crossing and shall proceed only upon exercising due care and observing that no train or trains are approaching."

The interpretation by the trial court of Section 95 renders Section 96 redundant and meaningless. When the duty to stop in Section 95 is qualified by the enumerated conditions and then correlated with Section 96, there emerges a complete statutory scheme.

The trial court recognized that its interpretation of Section 95 might not be upheld; so it further found that plaintiff had a duty to stop since condition 4 of Section 95 existed, i. e., an approaching train was plainly visible and was in hazardous proximity to such crossing.

■ Section 41–6–95, U.C.A.1953, is a statutory acknowledgment of the common law concept that because of the momentum of trains, the confinement of their movements to the track, and the necessity and public nature of railway traffic a railway company has the right of way.[3] Of

1. Webster's Third International Dictionary.

2. Webster's Third International Dictionary.

3. Pippy v. Oregon Short Line R. Co., 79 Utah 439, 451, 11 P.2d 305 (1932).

course, both parties must exercise reasonable care and diligence to prevent injury. Since a railroad track is itself a warning of danger, a traveler is duty bound to exercise proper precaution to inform himself as to the proximity of trains before attempting to enter and to go over a crossing.[4] The law requires that a traveler, approaching a railroad crossing, look and listen, and, if necessary, stop to avoid being injured by trains. This is his duty at all times and on all occasions, whether his view be obstructed or unobstructed, and the greater the hazard or danger surrounding him, the greater is the care required of him.[5]

▮▮ A plaintiff is contributorily negligent as a matter of law, if all reasonable minds would conclude that he failed to use the degree of care which an ordinary, reasonable, and prudent person would have observed for his own safety under the circumstances.[6] The undisputed facts of the instant action indicate that there was a zone from which plaintiff could have taken an unobstructed look at the tracks in a northerly direction prior to his entering the crossing. This case is factually similar to Steele v. Denver and Rio Grande Western Railroad Co.[7] wherein this court observed that although Steele's visibility was not obscured by the fill embankment or any other condition within ten feet of the track, he proceeded onto the track without stopping or observing the approaching train. The tracks were there to be observed, as was the railroad's warning sign upon its right of way. The failure of Steele to observe the fundamental rules of common sense and the law in driving his motor vehicle was negligent as a matter of law. The judgment of the district court is affirmed. Costs are awarded to defendants.

HENRIOD and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting).

I dissent.

In the case of Preston v. Lamb [1] this court said, "Ordinarily the question of negligence and contributory negligence may not be settled on a motion for summary judgment. . . ."

Also in Corbridge v. M. Morrin and Son, Inc.,[2] where we reversed the summary judgment given by the trial court, we said:

---

4. Id. at 452 of 79 Utah, 11 P.2d 305.

5. Steele v. Denver & Rio Grande Western Railroad Co., 16 Utah 2d 127, 130, 396 P.2d 751 (1964) ; Benson v. Denver & Rio Grande Western Railroad Co., 4 Utah 2d 38, 42–43, 286 P.2d 790 (1955).

6. Benson v. Denver & Rio Grande Western Railroad Co., Note 5 supra.

7. Note 5, supra.

1. 20 Utah 2d 260, 263, 436 P.2d 1021, 1022 (1968).

2. 19 Utah 2d 409, 432 P.2d 41 (1967).

. . . However, when it comes to determining negligence, contributory negligence, and causation, courts are not in such a good position to make a total determination for here enters a prerogative of the jury to make a determination of its own, and that is: Did the conduct of a party measure up to that of the reasonably prudent man, and, if not, was it a proximate cause of the harm done? [Citations omitted.]

In the case of Melton v. Greyhound Corporation [3] the Fifth Circuit Court of Appeals in reversing a summary judgment said:

. . . Important to the present case is the recognition by this Court "that as a general proposition the issue of negligence . . . . is ordinarily not susceptible of summary adjudication", but should be resolved by trial in the ordinary manner. [Citations omitted.]

I do not think that a person approaching a railroad crossing is always required to *stop*, look, and listen before proceeding to cross the tracks. True it is that the United States Supreme Court so stated in the case of Baltimore & O. R. Co. v. Goodman.[4] However, that case was explained in the later case of Pokora v. Wabash R. Co.[5] In the later case the view of the motorist was so obscured by a string of boxcars that he could not see an oncoming train. In reversing a dismissal by the trial court, the United States Supreme Court said:

. . . The record does not show in any conclusive way that the train was visible to Pokora while there was still time to stop. . . . For all that appears he had no view of the main track northward, or none for a substantial distance, till the train was so near that escape had been cut off. . . .

In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, unaided by that of sight. . . .

Toomer's Estate v. Union Pac. R. Co.[6] was a case similar to the instant matter in that the view of the motorist was obstructed by a freight train so that an approaching passenger train could not be seen for any appreciable distance from the track upon which it was running. There the defendant cited cases about "stop, look and

3. 354 F.2d 970, 972.

4. 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167.

5. 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 1152.

6. 121 Utah 37, 52, 57, 239 P.2d 163, 170, 172 (1951).

listen." In affirming a judgment for the plaintiff, this court said:

> From the foregoing cases, it appears clearly that where there are special dangers or hazards existing at a crossing it may very well be a jury question as to whether or not the traveler used ordinary reasonable care in going thereon.
>
> \*    \*    \*    \*    \*    \*
>
> In the cases so relied on, [by defendant] without exception, the ruling was based on the fact that the traveler had a *clear opportunity to observe* the oncoming train. . . .

In the case of Pippy v. Oregon Short Line R. Co.[7] the view of the plaintiff was obstructed so that he could not see an oncoming train until it was too late to avoid a collision. The trial court dismissed the action at the conclusion of plaintiff's evidence. This court reversed, saying:

> . . . In view here of the complicated conditions, . . . the obstructed view, . . . and the suddenness by which the plaintiff was confronted by the rapidly moving train, the care or the want of it exercised by the plaintiff is *not to be determined by arithmetical calculations* as to what within a few seconds before he attempted to enter the south-bound track, under normal conditions could or could not have been seen,

or the distance in which the truck, uninfluenced by the surroundings, could have been stopped.

In the instant matter the plaintiff was traveling for the first time upon a little-traveled, unimproved country road. It was dark, and he was entirely unfamiliar with the terrain. His road led him in an easterly direction to within a short distance of a cut in the land 20 feet deep in which the defendant's tracks lay. This cut ran north and south and was deep enough to hide a train even in daylight. The road turned south, parallel with the cut, and for a very short distance, and then abruptly turned eastward again—all the time descending to the level of the tracks.

The plaintiff in his deposition testified that the western embankment of the cut was approximately ten feet north of the road upon which he was traveling and so obstructed his view to the north that he could not have seen the approaching train had he stopped 10 feet from the tracks. He said he saw the train only a split second before it struck his car.

The engineer, who knew of the crossing and was looking for danger, testified in his deposition that plaintiff's car could not be seen until it was within 20 feet of the clearance of the right of way and that in

7. 79 Utah 439, 462, 11 P.2d 305 (1932).

fact he did not see the plaintiff at all until his train was 10 feet from the crossing.

Now, objection may be made to the testimony of the engineer in the deposition for the reason that the document came to this court sealed. This court has held that an unsealed deposition was not before the lower court at trial and that in such circumstances we would not note the contents thereof.[8]

In my opinion all depositions on file should be opened and considered before the trial court either grants or refuses a motion for summary judgment. Rule 56(c) U.R.C.P., Utah Code Annotated, Vol. 9, 1973 Pocket Supplement, provides as follows:

. . . The judgment sought shall be rendered forthwith if the pleadings, *depositions*, answers to interrogatories, and admissions *on file*, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . [Emphasis added.]

I think there is an issue of contributory negligence which should be determined by a jury, and I would, therefore, reverse the summary judgment rendered below and remand the case for trial. I would award costs to the appellant.

CROCKETT, J., concurs in the view that there are issues as to negligence and contributory negligence which should be submitted to a jury. This conclusion is based on the record as presented to the trial court, as I think it should be.

8. Thompson v. Ford Motor Co., 14 Utah 2d 334, 384 P.2d 109 (1963).